ATCHISON, T. & S. F. RY. CO. v. WEEKS et al.

(District Court, W. D. Texas, El Paso Division. January 25, 1918.)

No. 109.

1. COURTS ☞7—JURISDICTION—TRANSITORY ACTIONS.

An action for damages for personal injuries suffered by plaintiff while in the service of defendant is transitory in its nature, and may be maintained in any court properly obtaining jurisdiction of defendant.

2. CONSTITUTIONAL LAW ☞309(1)—"DUE PROCESS OF LAW"—WHAT AMOUNTS TO.

A judgment rendered by a state court against a foreign corporation without notice to it as required by law is not "due process of law," and is void as in violation of Const. U. S. Amend. 14.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

3. CORPORATIONS ☞668(1)—FOREIGN CORPORATIONS—PROCESS.

Foreign corporations can be served with process within a state only when doing business therein, and such service must be made upon an agent who represents the corporation in such business.

4. RAILROADS ☞33(2)—SERVICE OF PROCESS—EVIDENCE.

Where a judgment rendered in a Texas state court against a foreign railroad corporation was attacked on the ground of the state court's want of jurisdiction, evidence held to show that alleged agents of the corporation who were served with process were not in fact its agents.

5. RAILROADS ☞33(2)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.

Rev. St. Tex. 1911, art. 6406, forbids the acquisition or ownership of any railroad within the state by any corporation except when chartered by the laws of the state, and Const. art. 10, § 6, forbids the consolidation of any railroad organized under the laws of the state with any railroad organized under the laws of any other state or of the United States. A foreign corporation, owning and operating a line of railroad extending through several other states, entered into an arrangement with a Texas corporation duly organized, which owned a small railroad lying wholly within the state of Texas, whereby through trains were operated over the line of the foreign corporation and over the line of the Texas company. The Texas company owned no rolling stock, but the accounts were kept separate, and employés who in many instances represented both railroads were separately paid by each. An employé of the foreign corporation injured in a foreign state sued the foreign corporation in the Texas courts. Held, that as it is to be presumed that he could secure adequate relief in the state where the cause of action arose, and as the Texas railroad corporation was organized in accordance with the Texas laws, service of process on its officials cannot be treated as service on the foreign corporation on the theory that, as the foreign corporation owned the stock of the Texas corporation, it was working a deception and was doing business in Texas, for the fraud in no event could injure one whose cause of action arose out of a transaction in a foreign state.

6. EVIDENCE ☞84—PRESUMPTIONS—RELIEF.

It will be presumed that one whose cause of action arose in a foreign state and whose courts were open to him could secure in those courts every right to which he was entitled.

7. CORPORATIONS ☞438—OWNERSHIP OF STOCK—EFFECT.

The property of a corporation is owned by the corporate entity and not by the owner or owners of its stock, this being true whether the stock is owned by several or only one, or whether it is owned by a natural person, or a corporation engaged in the same business.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. RAILROADS ☞33(2)—FOREIGN CORPORATIONS—PROCESS—"DOING BUSINESS IN STATE."

Under Rev. St. Tex. 1911, art. 1830, par. 28, declaring that foreign corporations may be sued in any county where the cause of action or a part thereof accrued, or where such corporation may have an agency or representative, and articles 1861, 1862, authorizing service on foreign corporations by service on the executive officers or any local agent within the state, a foreign railroad corporation which maintained a general manager within the state of Texas, who by letter and telegram directed the movement of its trains in other states, and under whom there was a force of employés, is "doing business within the state," and service on such general manager is sufficient to give the state court jurisdiction over the person of such corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

9. CORPORATIONS ☞666—OBJECTIONS TO VENUE—WAIVER.

Where a foreign corporation was doing business in the state and was bound by service on its agent, an objection to the venue, in that the action was instituted in a county other than where the agency was maintained, is waived where not duly made and, in event of the corporation's nonappearance, default judgment was properly rendered.

10. COURTS ☞14—JURISDICTION—FOREIGN CORPORATION—NONRESIDENT.

Where a foreign corporation doing business in the state was duly served by service on its agent, the state court had jurisdiction to entertain an action on a transitory cause of action arising without the state.

In Equity. Bill by the Atchison, Topeka & Santa Fé Railway Company against J. F. Weeks and others for an injunction. Injunction denied.

This suit is brought by the complainant, the Atchison, Topeka & Santa Fé Railway Company, against the defendants J. B. Roberts, temporary administrator of the estate of O. L. Kelso, deceased, J. F. Weeks, Charles Owen, and Seth B. Orndorff, sheriff of El Paso county, to restrain them by injunction from the collection of a judgment of a state court. The judgment complained of was rendered by the District Court of the Sixty-Fifth Judicial District of Texas at El Paso on June 2, 1917, for the sum of $3,500 in a suit in which defendant Kelso herein was plaintiff, and complainant was defendant.

At the time of commencing his said suit in the state court, and at all times since then until his death, the said Kelso was a resident of the state of California, and his cause of action was a claim for damages growing out of personal injuries received by him in California through the alleged negligence of the defendant company while in the performance of his duties as an employé.

The complainant is a railway corporation duly organized and existing under and by virtue of the laws of the state of Kansas, and a citizen thereof, and has its principal office and place of business in the city of Topeka in said state.

Citations were duly issued out of said state court and served upon R. F. Goering, W. R. Brown, L. F. Gifford, and R. J. Parker, each of whom were alleged by the plaintiff Kelso to be the agents of the defendant company, and that said company was doing business in the state of Texas.

At the term succeeding the ensuing term of the court to which said citations were returnable, all of said persons upon whom citation had been served filed affidavits in the case as amici curiæ, denying they were at the time said citations were served agents or representatives of the defendant company conducting any business in the state of Texas for it, and denying that it was doing business within the state of Texas, or that it had any office, officer, representative, or agent within the county of El Paso, state of Texas, or that it had any line of railway extending into or through said El Paso county. And at the term following, the court, after considering said affidavits and hearing evidence thereon, found that said persons, and each of them, were agents and represent-

atives of the defendant company, and that the defendant was doing business in El Paso county, Tex., and ordered that said affidavits be overruled and held for naught, and that the defendant company be required to answer as required by said citations, and each of them, as served upon "said agents and representatives."

At the term of the court next following the defendant company not having answered, and without otherwise having made any appearance, unless the said amici curiæ proceedings can be construed as an appearance, judgment by default for plaintiff was rendered.

It is alleged by complainant that the said O. L. Kelso, plaintiff in the state court, died on or about the 22d day of May, 1917, a date prior to the judgment by default on June 2, 1917, but no proof has been submitted upon this point, and therefore it will be presumed that said Kelso was living at the time said judgment was rendered.

On July 13, 1917, the defendant herein, J. B. Roberts, was appointed temporary administrator of the estate of O. L. Kelso, he having died in the meantime. The defendants Weeks and Owen were the attorneys of the said Kelso in the prosecution of said case in the state court and in obtaining said judgment, and they are now the attorneys of the said Roberts, the temporary administrator, and are acting with him in suing out execution on said judgment and in placing same in the hands of the sheriff, the defendant Orndorff, herein to be levied upon property of the defendant company to satisfy said judgment.

The attack upon the judgment which complainant is seeking herein to enjoin is based upon the contention that said judgment is null and void because no legal service of citation was had upon complainant, and that therefore same was entered in contravention of the Fourteenth Amendment to the Constitution of the United States.

From the evidence submitted the following facts are gathered in so far as they are material to the question of service:

The persons upon whom service of citation was had in the state court were at the time of service agents and employés of the Rio Grande, El Paso & Santa Fé Railroad Company. W. R. Brown was the vice president and general freight and passenger agent of said company; R. F. Goering was its local agent at El Paso; L. F. Gifford was a conductor for both companies, as will hereinafter appear, and R. J. Parker was assistant to the president of the Rio Grande Company and general manager of the western lines of the Atchison Company, as hereinafter stated. They all resided at El Paso, except the said Parker. Said Parker resided at Amarillo, Potter county, Tex.

The complainant, the Atchison, Topeka & Santa Fé Railway Company, which for convenience will hereafter be referred to as the Atchison Company, and the Rio Grande, El Paso & Santa Fé Railroad Company, which will hereafter be called the Rio Grande Company, both are included in that railway system designated as the "Santa Fé Lines."

The lines of the Atchison Company extend into or through only the states of Illinois, Iowa, Missouri, Kansas, Nebraska, Oklahoma, Colorado, New Mexico, Arizona, California and Nevada, and do not extend into Texas.

The Rio Grande Company is a Texas corporation, and its line is wholly within the state of Texas, and extends from El Paso to the boundary line of New Mexico, a distance of 20.22 miles, and there it forms a junction with the line of the Atchison Company, the two forming one continuous line. Through trains were operated over the lines of both companies as if they were one continuous line, but under contractual arrangements between the companies the train crews were paid by each company respectively in proportion to the service rendered for it. Through passenger tickets and shipping contracts issued by each were recognized and accepted by the other, but each kept its own accounts separately, and a division pro rata of revenues arising from such through business was made by accounts mutually rendered and paid by each to the other.

Reports required by law to be rendered to public officials were regularly made by the Rio Grande Company for itself.

The Atchison Company employs a train dispatcher located at San Marcia? on its line in New Mexico who attended to the dispatch of trains over both lines, but the Rio Grande Company paid for the service rendered to it by said train dispatcher.

The Rio Grande Company owns its roadbed, tracks, terminal facilities, and shops at El Paso, and bore the expense of their upkeep and maintenance, but it did not own any rolling stock whatever, and all the rolling stock it used was leased by it from the Atchison Company, for which it paid rental charges.

On January 1, 1900, the Atchison Company by legislative sanction leased the Rio Grande Company's railway and property for a period of 10 years, and operated same during said period, but at the end of said time, to wit, on December 31, 1910, said lease was terminated by the Railroad Commission of Texas, as it had the authority to do, by order made on August 18, 1910, and same was not renewed. After the lease referred to had expired the Atchison Company continued to keep an office and agency at El Paso until April 1, 1914, when such office and agency was discontinued to avoid suits against it in El Paso county on causes of action arising outside of the state. During such time the said W. R. Brown was the division freight and passenger agent of the Atchison Company, and J. S. Morrison was the city passenger and ticket agent for said company, both located at El Paso.

The capital stock of the Rio Grande Company is $200.000 divided into 2,000 shares of $100 each, of which the Atchison Company holds and owns 1,993 shares. The other shares stand in the names of the seven directors, 1 share each. The directors are: E. P. Ripley, who resides in Chicago; W. R. Brown, R. F. Goering, J. G. McNary, U. S. Stewart, J. S. Morrison, and J. F. Williams, all of whom reside in El Paso, Tex. No evidence has been submitted upon the question as to the real ownership of the stock held in the names of E. P. Ripley, J. G. McNary, J. S. Morrison, or J. F. Williams; but W. R. Brown testified that he has and owns 1 share of stock in the Rio Grande Company, but it is not for sale; that he did not pay actual money for it; that it is customary of all railroads for certain officers of the road to hold stock—you do not have to pay money for it—it is part of the perquisites that go with the job; that the other directors own their stock; that naturally one might assume that the stock was given to the directors to qualify as directors; that while he owned the stock he did not have it in his possession, but could get it easily; that he thought it was in the hands of Mr. Ripley; that if the Rio Grande Company should fire him, he would get the stock, but if he were to accept a position with the Atchison Company, it would be the right thing for him to turn it back.

And R. F. Goering testified that he never paid anything for his stock, and did not remember whether he ever had his stock in his possession or not; that the stock was given to him, and that he returned it the following day. The stock was sent to him by Mr. E. L. Copeland, who was then secretary; that he does not remember whether it was sent by mail or express; that it came from Chicago; that the certificate was for 1 share of stock; that he did not know before he received it that it was coming to him; that he did not know where the letter is that accompanied it; that it has been 8 years ago; that he does not remember what the letter said; that the letter probably requested that he sign a receipt for the share of stock; that he is sure he signed a receipt for the share of stock; that he sent it back to the official who sent it to him; that it might have been a man right here in El Paso; that when he turned it back he received a receipt for it; that he does not remember who sent the receipt back to him, but he is positive he got a receipt; that he probably filed the receipt among the records of the railroad company; that the share of stock was given to him, and he has the same interest in it now that he had originally; that he would have to look up the original receipt, but that he would say that he would be willing to take an oath that the share is his, and that he was entitled to the proceeds thereof; that he has never received any dividends on that share of stock, and never asked the Rio Grande Company or the Atchison Company for dividends on that share of stock; that he does not know whether any divi-

dends had ever been declared; that if the stock had paid dividends, somebody else received them and not him; that he has never promised anybody to pay for that share of stock; that he is not under any obligations, legal or moral, so far as he knows, to pay any one anything for the stock.

And U. S. Stewart testified that he owns 1 share of the Rio Grande Company's stock and has owned it since 1895; that he does not know whether the old share has ever been taken up and a new one issued or not; the records will show; that the Rio Grande Company was reorganized in May, 1914, and he thinks the stock was reissued; that he did not pay anything for his share of stock originally; that he was made a director of the company, and it was necessary to hold a share of stock; that they wanted him as a director, and a share of stock was put in his name; he did not subscribe for it; it was just transferred to him; that it had already been issued, and was transferred to him by some one else; that he does not remember who transferred it to him, but he thinks H. S. Beattie. He was treasurer and secretary of the Rio Grande Company before him, and he took his place and he ceased to be an official; that he does not remember whether he actually turned the stock over to him and put same in his possession or not; that he does not know who is the custodian of that stock now; that he has no trustee or other person acting in the position of guardian or superintendent for him that keeps possession of his stock; that he cannot tell where that share of stock is at this time; that he has not kept up with that share because he does not consider that it actually belongs to him; it belongs, he supposes, to the Rio Grande Company, and if he ceased to be a director of the Rio Grande Company he would not be willing to make affidavit that he was a bona fide owner of that stock; that as he understands it, that share of stock was put in his name simply to qualify him as a director of the road, and he is not an actual bona fide owner of the stock.

The officers of the Rio Grande Company at the time the suit in the state court was commenced were E. P. Ripley, president, W. R. Brown, vice president, and U. S. Stewart, secretary and treasurer. E. P. Ripley is also president of the Atchison Company and of all the other companies owning Santa Fé lines both within and without the state of Texas. The board of directors of the Rio Grande Company held meetings at El Paso, and directed and transacted the business of the company, and U. S. Stewart performed the usual and customary duties of secretary and treasurer.

L. F. Gifford was a conductor in the employ of both companies, but his services for the Atchison Company began and ended at the boundary line between Texas and New Mexico, and was performed wholly in New Mexico. He performed no service for the Atchison Company in Texas. In the operation of his train in Texas he was in the employ of and paid by the Rio Grande Company.

R. J. Parker, upon whom citation was served in the state court, was at the time of service one of the general managers of the Atchison Company, and was located and had his permanent residence at Amarillo, Potter county, Tex. He had charge and direction of the operation of its trains and the maintenance of its property upon its western lines in the states of Kansas, Oklahoma, Colorado, and New Mexico. Said Atchison Company also maintained, and still maintains at Amarillo, the office of general superintendent, superintendent, trainmaster, general foreman, chief engineer, and mechanical superintendent, and they, under the directions of the said Parker, assisted in the direction of the operation of said company's trains and service and the maintenance of its property on its western lines outside of Texas. It is shown by the evidence that the said Parker performs his duties as such general manager from Amarillo by means of letters and telegrams, but, there being no evidence to the contrary, it is to be presumed that his said assistants perform their duties in the usual way, presumably by telegrams and letters, and also by personal trips into and out of the state of Texas and by personal supervision. Except as above stated, the said Parker and said other officers of the Atchison Company perform no duty with reference to the business of the Atchison Company in Texas.

R. J. Parker was and is also the vice president and chief operating officer of the Panhandle & Santa Fé Railway Company which has its principal office at Amarillo, Potter county, Tex. This is one of the "Santa Fé Lines" and is in Texas. Said Parker is also assistant to the president of the Rio Grande Company.

F. G. Pettibone, as general manager; W. E. Maxson, as general superintendent; J. H. Hershey, as general freight agent; O. L. Clark, as land and tax commissioner; John S. Douglas, as general claim agent; J. Matthews, as telegraph manager, who all reside in the county of Galveston, state of Texas; and J. E. McQuillan, as mechanical superintendent; F. E. Taylor, as superintendent; James V. Clifford, as trainmaster; Edmund B. Fry, as chief dispatcher; K. E. Shirer, as general foreman B. & S. Water Service; E. S. Newton, as storekeeper—all of whom reside in the city of Cleburne, Johnson county, Tex.; R. B. Smith, as claim adjuster, who resides in Gainesville, Cooke county, Tex., perform work and services in the management and operation of the lines and railroad of the Atchison Company in the state of Oklahoma between Culver Junction and Shawnee, and between Paul's Valley and Lindsay and between Davis and Sulphur. All of the work and service performed by these officers residing at Galveston, Cleburne, and Gainesville relates to the management and operation of the lines of railway of the Atchison Company in the state of Oklahoma. Said officers issue instructions by letters and telegrams, respectively, from Galveston, Cleburne, and Gainesville direct to officers and agents of the Atchison Company in the state of Oklahoma, and by letters and telegrams they communicate concerning the business of the Atchison Company in the state of Oklahoma with officers of the Atchison Company who reside in New York, Chicago, Topeka, and other places. At the time said suit was filed in the state court, and for some time prior thereto, and ever since, the lines of railway of the Atchison Company situated in other states have been managed and operated in the manner stated by officers residing in the counties of Potter, Galveston, Johnson, and Cooke in the state of Texas.

Trains are operated eastwardly from Los Angeles and San Francisco by the Atchison Company to Texico, and by the Panhandle & Santa Fé Company thence to the Texas state line near Higgins, and thence by the Atchison Company northwestwardly through Oklahoma and Kansas said trains are run and operated over the western lines of the Atchison Company, which lines lie outside of the state of Texas under the direction of said Parker as general manager and said Sears as general superintendent, as has already been stated, and they are operated over the Panhandle & Santa Fé Company's lines in the state of Texas under the direction and control of said Parker as vice president, and the said Sears as general superintendent of the Panhandle & Santa Fé Company. Said trains are operated continuously by the same employés across the state line at Texico into Texas, and by the same employés across the state line into Oklahoma, said employés being the employés of the Panhandle & Santa Fé Company, which company is reimbursed by the Atchison Company for such services as they perform for it on its lines outside of the state of Texas.

Turney, Culwell, Holliday & Pollard, of El Paso, Tex., for complainant.

Weeks & Owen and Geo. E. Wallace, all of El Paso, Tex., for defendants.

SMITH, District Judge (after stating the facts as above). [1] The action in the state court in which the judgment complained of was rendered, being for personal injury, was transitory in its nature, and maintainable in any court properly obtaining jurisdiction of the person of the defendant. Railway Co. v. Sowers, 213 U. S. 55, 29 Sup. Ct. 397, 53 L. Ed. 695; Dennick v. Railroad Co., 103 U. S. 11, 26 L.

Ed. 439; Stone v. United States, 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127.

[2] Therefore it is to be determined from the foregoing statement of the facts, whether or not the Atchison Company had by legal service been brought within the jurisdiction of the state court. If it had not, the injunction prayed for should be granted, for it requires no citation of authorities to maintain the proposition that a judgment rendered against a foreign corporation without notice to it as prescribed by law is not due process of law and is void, being in contravention of the Fourteenth Amendment of the Constitution of the United States.

[3] The statutes of Texas providing for service on foreign corporations are as follows (Revised Statutes of Texas):

Art. 1830, par. 28. Foreign, private or public corporations, joint-stock companies or associations, not incorporated by the laws of this state, and doing business within this state, may be sued in any court within this state having juridsiction over the subject-matter, in any county where the cause of action, or a part thereof, accrued, or in any county where such company may have an agency or representative, or in the county in which the principal office of such company may be situated; or, when the defendant corporation has no agent or representative in the state, then in the county where the plaintiffs, or either of them, reside. Acts of 1887, p. 131.

Art. 1861. In any suit against a foreign, private or public corporation, joint-stock company or association or acting corporation or association, citation or other process may be served on the president, vice president, secretary or treasurer, or general manager, or upon any local agent within this state, of such corporation, joint-stock company or association, or acting corporation or association. Acts of 1885, p. 79.

Art. 1862. Service may be had on foreign corporations, having agents in this state, in addition to the means now provided by law, by serving citation upon any train conductor who is engaged in handling trains for two or more railway corporations, whether said railroad corporations, are foreign or domestic corporations, if said conductor handles trains over foreign or domestic corporations' track across the state line of Texas, and on the track of a domestic railway corporation within the state of Texas, or upon any agent who has an office in Texas, and who sells tickets or makes contracts for the transportation of passengers or property over any line of railway or part thereof, or steamship or steamboat of any such foreign corporation or company. For the purpose of obtaining service of citation on foreign railway corporations, conductors who are engaged in handling trains, and agents engaged in the sale of tickets or the making of contracts for the transportation of property, as described in this article, are hereby designated as agents of said foreign corporations or companies upon whom citation may be served. Acts 1905, p. 30.

It is well settled that foreign corporations can be served with process within the state only when doing business therein, and that such service must be upon an agent who represents the corporation in such business. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Peterson v. Chicago, Rock Island & Pacific Railway Company, 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841.

Therefore the question of service in the state court may be divided into three propositions:

(1) Were the persons served such officers or agents of the Atchison Company as the statutes of the state provide may be served?

(2) Was the Atchison Company at the time of service doing business in the state of Texas?

(3) If so did the persons served represent said Atchison Company in such business?

[4] First taking up the persons served at El Paso, it seems clear from the evidence that at the time of the service of citation upon them neither W. R. Brown nor R. F. Goering was in the employ of the Atchison Company or the officers or agents of said company in any capacity.

L. F. Gifford was in the employ of the Atchison Company as conductor, but performed no service for it in the state of Texas. He was also in the employ of the Rio Grande Company as conductor, and his train was operated over both lines, but on crossing the state line into New Mexico he became the agent of the Atchison Company, and in crossing the state line into Texas he ceased to be the agent of that company and became the agent of the Rio Grande Company. As an essential to the validity of the service upon him it was necessary that he should at the time of service have been the representative of the Atchison Company in business then being done by it in Texas. This essential was lacking. Peterson v. Chicago, Rock Island & Pacific Railway Company, 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841.

[5-7] It is contended by counsel for defendants that the Rio Grande Company was owned and operated by the Atchison Company; that by reason thereof the Rio Grande Company and its agents were the agents of the Atchison Company; that through such agents the Atchison Company was doing business in Texas; and that the Rio Grande Company was a mere mask and dummy through which the Atchison Company transacted its business in Texas. Under the evidence and authorities I do not think this contention can be maintained. No question is raised as to the validity of the Rio Grande Company:

Article 6406 of the Revised Statutes of Texas forbids the acquisition or ownership of any railroad within the state by any corporation except one chartered under the laws of the state; and section 6, article 10, of the Constitution of Texas forbids the consolidation of any railroad organized under the laws of the state, with any railroad organized under the laws of any other state or of the United States. Hence the organization of the Rio Grande Company and the operation of its line by it was in harmony with the policy of the state of Texas in such matters and consistent with the Constitution and the laws of the state. And if, as contended, the Atchison Company had in fact become the real owner of the Rio Grande Company's railroad and was operating it as such owner, such ownership and operation was unlawful. However, if as a matter of fact the Atchison Company was the real owner and operator of the Rio Grande Company's railroad, whether lawfully or unlawfully it should be held that such fact constituted doing business in Texas and the service in the state court should be held to be valid. Cases may be found holding that where one corporation uses another corporation as a "mask" or a "dummy" to defraud, the person defrauded may sue the former corporation for any damages he may thereby suffer.

248 F.—62

It is also true that one corporation may so use another corporation as to bring into existence equities in favor of a third party upon which such third party may maintain an action against the former. But such is not the case here. The question in the state court was, and the question here is, purely and simply one of jurisdiction, and in no sense did it enter into the merits of the case or affect the right of said Kelso to recover in a court having jurisdiction. His cause of action arose in the state of California, and the courts of that state were open to him, and of course it is to be presumed that he could secure in those courts every right to which he was entitled. And, as already stated, he also had the right to bring his suit in any court having jurisdiction of the subject-matter, and which could by proper service secure jurisdiction over the person of the Atchison Company. He chose to bring his suit in a Texas court. He does not and cannot claim any rights accruing to him from fraud or deception or any other conditions producing equities in his favor arising from any alleged connection between the Atchison and Rio Grande Companies. The question is, Were the actual relations of these two companies such as to justify the holding that the business of the Rio Grande Company in Texas was in truth and in fact the business of the Atchison Company? It is clear they were not.

The Rio Grande Company was a separate legal entity, possessing all the legal attributes of a valid railroad corporation. It had its own officers and board of directors, who had and exercised the immediate and exclusive supervision and control and management of its property and business. It had its own employés, its own treasury, and its own rules and regulations. It kept its own accounts, and had no relations with the Atchison Company inconsistent with its own management and proprietary interest. And there is no evidence that the Atchison Company owned any proprietary interest in the property of the Rio Grande Company or exercised, or attempted to exercise, any control or management over its business.

It is true that a large majority and possibly all the stock of the Rio Grande Company was owned by the Atchison Company, but this fact does not even tend to show that the latter owned or controlled the property of the latter or gave it the right to control its business. The property of a corporation is owned by the corporate entity, and not by the owner or owners of its stock. This is true whether the stock is owned by two or more persons or only one, or whether it is owned by a natural person or by a corporation engaged in the same business. Cook on Corporations, § 709, and authorities therein cited; Peterson v. Chicago, Rock Island & Pacific Railway Company, 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; Pullman Palace Car Co. v. Missouri Pacific Company, 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113.

The fact that the two corporations had the same president and had common agents and employés to a certain extent does not alter the case as the evidence showed they were paid in proportion to the business done for each company.

Therefore it must be held that at the time of service in the state court the Atchison Company was not doing business in El Paso county, and that neither the service upon W. R. Brown, nor upon R. F. Goering, nor upon L. F. Gifford was sufficient service upon or secured jurisdiction over said company.

[8, 9] The only other person upon whom service in the state court was had was R. J. Parker. He was located at Amarillo, Potter county, Tex., and was a "general manager" of the Atchison Company, one of the agents expressly designated by the statutes of the state upon whom service of a foreign corporation might be made. Therefore the only question as to him is whether or not at the time of service he was the representative of the Atchison Company in relation to any business it was then doing in Texas. There is no dispute as to the facts regarding this question. Said Parker was located at Amarillo, where he kept an office at which he performed his duties as the general manager of said company. The lines of said company's railway under his management were extensive, and were in the states of Oklahoma, Kansas, Colorado, and New Mexico, but did not extend into Texas. His duties in relation to said lines were to direct the operation of the trains and service upon said lines and to look after the maintenance of the company's properties upon said lines and he performs his duties from Amarillo by means of telegrams and letters. There are also at Amarillo other employés of said Atchison Company, to wit, a general superintendent, superintendent, trainmaster, general foreman, chief engineer, and mechanical superintendent, and they, under the directions of said Parker, assist him in the performance of his duties. Upon this state of facts I hold that said company was doing business in Texas, and that service upon said Parker was proper, and brought said company within the jurisdiction of the state court in El Paso, and, the company not having objected to the venue, said court properly rendered judgment by default. The question whether a foreign corporation is doing business in a given state is to be determined from the facts of each particular case, and not from any fixed definite rules. The service performed for the Atchison Company in Texas was an essential part of its business, for the protection of which the company could invoke the laws and the courts of the state. It was in no sense spasmodic or temporary, but permanent and continuous, in its nature, such as to indicate the presence of the corporation itself in the state.

There are many decisions—too numerous to be cited here—in which given statements of fact are discussed and held to show, or not to show, the doing of business by a corporation in a state, but I believe a careful examination of them with proper deductions will support the conclusion I have reached in this case upon this point. One case I consider specially strong in support of my conclusion is Washington, Virginia Railway Co. v. Real Estate Trust Co., 238 U. S. 185, 35 Sup. Ct. 818, 59 L. Ed. 1262.

[10] I do not agree with the contention of complainant that the service upon said Parker was invalid, because the cause of action upon which the suit was brought in the state court arose outside of the state of Texas. The cases of Old Wayne Life Association v.

McDonough, 204 U. S. 22, 27 Sup. Ct. 236, 51 L. Ed. 345, and Simon v. Southern Railway Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492, cited in favor of this proposition, are not in point. In those cases "substituted" service was had, and in neither case was service had upon an agent of the corporation, and therefore, if good at all, it could be good only in causes of action arising out of the business of the corporation in the state in which the suit was brought. It is not believed that any decision of a federal court can be found holding that where service was had upon the agent of a foreign corporation doing business within the state where suit is brought, such service is not good because the cause of action did not arise in that state. The statutes of·the various states providing for service upon foreign corporations seem to be based upon the theory that an agent doing the business of a corporation in a state brings the corporation itself into the state, and that it may fairly be presumed that such agent would notify the governing body of the corporation of any service of citation upon him. No such presumption may be indulged in cases where there is substituted service upon an official of the state and not upon an agent of the corporation.

In view of the foregoing opinion I hold that the judgment in the state court was rendered upon valid service, and is itself valid. Therefore the injunction prayed for should be denied, and judgment is rendered accordingly.