## EICHELBERGER et al. v. ARLINGTON BUILDING, Inc., et al.

(Court of Appeals of District of Columbia. Submitted February 7, 1922. Decided May 1, 1922.)

No. 3506.

I. **Corporations ⊙⇒1—Corporation is a distinct entity, and property belongs to it and not to stockholders.**

A corporation is a distinct entity, and property acquired by it belongs to it, and not to the stockholders, even where all the stock is owned by one person.

2. **Corporations ⊙⇒1—Entity disregarded, when used to perpetrate fraud.**

The separate entity of a corporation is not recognized, where its recognition would result in promoting illegality, fraud, or injustice, since the franchise is granted by the state for a useful purpose, and may not be employed to further wrong, and where it is so employed the law will go beyond the fiction, and treat the stockholders as if the corporation did not exist.

3. **Corporations ⊙⇒30(5)—Alleged creation of and conveyance to corporation by partners held not fraudulent, so as to justify disregarding corporate entity and treating stockholders as owners of property.**

Where a bill charged that a corporation formed by partners, purchasers of a building, to take title to the property, was a mere shell or paper corporation, but not alleging that it was not properly organized, or that it was being fraudulently used, and its allegation that the property was conveyed to the corporation for the purpose of hindering plaintiff, one of the alleged partners, of his just claims and demands as one of the purchasers, was not sustained by the proof, it was not shown that the corporation was formed for a fraudulent or illegal purpose, so as to justify disregarding its corporate entity and treating the stockholders as the owners of the property.

4. **Judgment ⊙⇒17(1)—Personal judgment cannot be rendered, unless personal service is had.**

Service by publication gives no right to a personal judgment against individuals not personally served.

5. **Corporations ⊙⇒393—Custody of corporate funds does not give jurisdiction over stockholders.**

The fact that the court acquired custody of funds belonging to a corporation does not give it jurisdiction over the stockholders controlling it, who were not personally served, and none of whose funds were within the court's jurisdiction, there being no showing of fraud which justified the court in disregarding the corporate entity.

6. **Appearance ⊙⇒10—Defendant appearing as witness at hearing on motion to dismiss does not submit to jurisdiction.**

A defendant, who entered a special appearance to move to dismiss the bill because of want of personal service on him, can appear as a witness and testify at a hearing on his motion to dismiss, without submitting to the jurisdiction of the court.

7. **Appearance ⊙⇒10—Party can defend on merits and reserve right to review overruling of motion to dismiss.**

A defendant, whose motion to dismiss for want of service on him has been overruled, can contest the suit on its merits, and at the same time reserve for review the question whether the court had erred in overruling his motion.

Appeal from the Supreme Court of the District of Columbia.

Suit by Harry D. Eichelberger and another against the Arlington Building, Incorporated, and others. From a decree sustaining motions

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to ,quash the service and dismissing the bill, claimants appeal. Affirmed.

Dan Thew Wright and R. H. McNeill, both of Washington, D. C., for appellants.

Charles A. Douglas and Joseph V. Morgan, both of Washington, D. C., and Lewis C. Williams, of Richmond, Va., for appellees.

SMYTH, Chief Justice. Eichelberger filed his bill against Oliver J. Sands, James O. Winston, Thomas S. Winston, Jules Breuchaud, the Arlington Corporation, The Arlington Building, Incorporated, William G. McAdoo, Secretary of the Treasury of the United States, and John Burke, Treasurer of the United States, asking for certain relief.

The bill alleges that Eichelberger was a partner with Sands, the Winstons, and Breuchaud for the purpose of purchasing and selling at a profit what is known as the Arlington Hotel property, Washington, and that he, by virtue of the partnership, was to have a one-eighth interest in the property and the profits derived from the sale of it; that the property was subsequently purchased by the partnership, and title taken in the name of the defendant the Arlington Corporation; that the corporation was a mere shell affair, organized for the purpose of carrying into effect the partnership agreement, and that he, Sands, the Winstons, and Breuchaud were its directors; that, for the purpose of hindering the plaintiff in procuring his rights under the partnership, the directors organized another corporation, called the Arlington Building, Incorporated, and caused the first corporation to convey to it the property mentioned; that the building corporation was also a shell affair, organized to shield Sands, the Winstons, and Breuchaud, the only persons interested in its capital stock, and that plaintiff's ownership of the one-eighth interest in the partnership and in its profits "is evidenced by a certain paper writing signed by the plaintiff, by said Oliver J. Sands, James O. Winston, Thomas S. Winston, and Jules Breuchaud, and which paper was at or about the time of its execution delivered to the American National Bank of Richmond, Va., as agent and trustee for the plaintiff"; that the property, since its purchase by the partnership, had largely increased in value, and was readily salable at large profit; that the partnership expended large sums of money in and about the improvement of the property; that it had been sold to the United States government for $4,200,000; that the sum was payable by the Treasurer of the United States to the vendors, and would be paid to them by the Secretary of the Treasury and the Treasurer of the United States, unless they are restrained from doing so. The bill prayed for an injunction against the Secretary of the Treasury and the Treasurer, and for an accounting against the other defendants.

By agreement $50,000 was paid into the registry of the court to await the disposition of the case, and the Secretary of the Treasury and the Treasurer of the United States were dismissed from the suit. One McNeill filed what he called an intervening bill, and later a supplemental bill, but they are immaterial to the controversy.

At first personal service was not made on any of the defendants, except the Secretary of the Treasury and the Treasurer of the United

States. Afterwards they were served by publication. Appearing specially, the Winstons, Breuchaud, Sands, and the Arlington Corporation moved to quash the service made upon them, on the ground that there was no personal property in the District of Columbia belonging to them, or either of them, and that the personal property in the District of Columbia alleged as the basis of the motion for the order directing that they be served by publication belonged wholly to the Arlington Building, Incorporated.

Later one of the Winstons and the Arlington Corporation, by service on Winston, were served personally, it is claimed. He appeared specially and attacked the service, on the ground that at the time it was made he was a resident of Virginia, and was in the District attending as a witness in this case. Much testimony was taken, at the close of which the court sustained the motions to quash, and dismissed the bill, intervening bill, and supplemental bill.

It will be remembered that the bill charges that the agreement upon which Eichelberger bases his suit is in writing, signed by Sands, the Winstons, Breuchaud, and himself. There is but one agreement in the record signed by those persons, and it does not state that Eichelberger is entitled to anything from them. It does provide that a certain percentage of the profits derived from the property shall be paid to the American National Bank of Richmond, Va., but there is no provision for the payment of anything to Eichelberger. Pieces of oral and written evidence, when considered together, seem to indicate that Eichelberger was to receive part of the profits, but this does not prove the contract alleged in the bill.

[1] The money in the hands of the United States against which Eichelberger is seeking to enforce his claim represents, as we have said, a part of the purchase money paid by the United States government for the property. Concededly, the Arlington Building, Incorporated, had title to this property at the time of the sale, and conveyed it to the government. A corporation is a distinct entity, and property acquired by it belongs to it, not to the stockholders. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481; McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590. And this is true, even where all the stock is owned by one person. Atchison, T. & S. F. Ry. Co. v. Weeks et al. (D. C.) 248 Fed. 970; Peckett et al. v. Wood et al., 234 Fed. 833, 148 C. C. A. 431.

[2] But there is an exception to the entity rule, where its recognition would result in promoting illegality, fraud, or injustice. In other words, since the franchise is granted by the state for a useful and valid purpose, it may not be employed to further wrong. Where it is so employed the law will disregard the rule, go behind the fiction, and treat the stockholders as if the corporation did not exist. McCaskill Co. v. United States, supra; United States v. United Shoe Machinery Co. (D. C.) 234 Fed. 127; Linn & Lane Timber Co. v. United States, 236 U. S. 574, 35 Sup. Ct. 440, 59 L. Ed. 725; State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541.

[3] The bill does not charge that the corporation was formed, or is

being used, for any of the purposes just mentioned. It is, however, alleged that it is a mere shell or paper corporation. Just what is meant by this is not clear. There is no claim that it was not properly organized under the laws of its domicile. It has stockholders and directors. It is true the stockholders control it, but that surely does not render it invalid. The bill also charges that the conveyance to the corporation was with the intention of hindering and delaying the plaintiff "in his just claims and demands." Even if we construe this as charging that the corporation is being used for an improper purpose, there is no proof in the record to sustain it. The right claimed is against the individuals who own the stock of the corporation. It is true they conveyed the property to the corporation, but it is admitted that they own all, or substantially all, the corporate stock. A judgment in favor of Eichelberger could be enforced against their stock holdings. Even if it could not, there is neither allegation nor proof that they are insolvent, and have not sufficient other property to respond to any judgment that might be obtained against them. How, then, can it be said that the creation of the corporation and the conveyance to it of the property had the effect of perpetrating fraud or injustice against Eichelberger?

[4, 5] Since the claim alleged was upon a contract made by Sands and his associates, the plaintiff was not entitled to judgment against the corporation. Even if the claim was against them, they were not subject to judgment, as they had not been served personally, and they could not be served by publication, because there was no property of theirs in the custody of the court. Fidelity & Deposit Co. of Maryland v. Nelson, 267 Fed. 746, 50 App. D. C. 102, where many cases are cited.

[6] But counsel argues that, because one of the Winstons actually appeared in court and gave testimony, he submitted to its jurisdiction. And the question is asked: How can a defendant come into court to be a witness in his own case, on his own behalf, without appearing personally? We do not think the query as applied to the facts of this case presents any difficulty. Winston appeared specially and moved to quash the alleged service, for the reasons which we have already stated. His motion and the one made by his codefendants came on for hearing together. It appeared that, in order to dispose of them, it would be necessary to go into the testimony bearing on the question as to whether or not the money impounded in the registry of the court belonged to the moving defendants or to the corporation. This induced an agreement, made in open court, for the convenience of all concerned, that the testimony taken should apply, not only to the motions, but also to the merits, and that if, at the conclusion of the testimony, it was found that the property belonged to Sands and his associates, the motions should be overruled and an accounting ordered.

[7] Winston appeared as a witness in support of his motion. We do not think that under the circumstances he thereby submitted himself to the jurisdiction of the court over his person. Church v. Church, 50 App. D. C. 239, 270 Fed. 361, 14 A. L. R. 769, and cases cited. The fact that this is a civil proceeding does not distinguish it from the

Church Case, as is amply shown by decisions there referred to. If Winston's motion had been overruled at the opening of the case, he would then have had a right to contest the suit upon its merits, and at the same time reserve for our review the question as to whether or not the court had erred in overruling his motion, provided, of course, he had noted a proper exception. In re Chicago, Rock Island & Pacific Railway Co., Petitioner, 255 U. S. 273, 41 Sup. Ct. 288, 65 L. Ed. 631, decided February 28, 1921. We perceive no difference in principle between what we have just supposed and what he did. Of course, the mere fact that the two Winstons were in court during the taking of testimony with respect to the motions did not give the court jurisdiction over their persons, for the reasons given in the Church Case, supra.

We think no error was committed, and therefore we affirm the decree, with costs.

Affirmed.