WESTMINSTER INVESTING CORPO-
RATION, a corporation, Plaintiff,

v.

Garfield I. KASS, Rose Kass, Kass Realty
Company, Inc., a corporation.
Defendants.

UNITED STATES of America,
Plaintiff,

v.

The Right to Use and Occupy 64,417
SQUARE FEET OF LAND, MORE OR
LESS, Situate at 4433-4463 Connecticut
Avenue, N.W., and 0.11 Acre of Land
in Parcels 57/90 and 57/91 in the DIS-
TRICT OF COLUMBIA, Westminster
Investing Corporation, a New York Cor-
poration, Kass Realty Company, Inc., a
Delaware Corporation et al., and Un-
known Owners, Defendants.

Civ. A. Nos. 1371-66, 23-66.

United States District Court
District of Columbia,
Civil Division.

April 17, 1967.

Benjamin W. Dulany, of Douglas, Obear & Campbell, Washington, D. C., for plaintiff.

Frank F. Roberson, of Hogan & Hartson, Washington, D. C., for defendants.

Anthony C. Liotta, D. H. Blackwelder, Department of Justice, Washington, D. C., for the United States.

OPINION

JOHN LEWIS SMITH, District Judge.

Plaintiff Westminster Investing Corporation (herein referred to as "Westminster") owners of parcel 57/61 improved by a commercial building located at 4433–4463 Connecticut Avenue, N. W., brought this action for an injunction and other relief, asserting the right to a perpetual easement by implied grant over a road located on an adjacent tract of land. Title to the adjoining property (herein called the "south tract") is in Kass Realty Company, Inc. ("Kass Realty"), owned entirely by the individual defendants Garfield and Rose Kass. This action was consolidated with District Court Docket No. 23–66, a condemnation proceeding pending before this court, for the sole purpose of determining the one issue common to both cases, namely, whether Westminster has a perpetual easement over the south tract. The United States has been represented in these proceedings.

In 1963 the individual defendants owned all the stock of Chevy Chase Park & Shop Stores, Inc. with the exception of one share held by their son-in-law, Irving D. Berger. Plaintiff's property was originally purchased by Park & Shop January 14, 1938. A shopping center and office building were erected on the site immediately after its acquisition. Access for servicing the building was originally obtained from the front. On July 16, 1938 and March 13, 1939 two unimproved parcels comprising the south tract were purchased by Kass Realty; they have remained commercially unimproved. The north and south tracts are separated by a public alley which does not run to the back property line due to a steep grade. Both properties are bordered at the rear by land owned by the United States Government.

That portion of plaintiff's premises condemned for a term of years by the Government is located on the four floors below street level in the rear of the building. The area is occupied by the Harry Diamond Laboratory, a high security Army research organization which has been a tenant since 1951. The United States Government first condemned this area for use of the Laboratory for a term of years in 1961.

The Government built the road in issue with defendant's permission in 1952 to transport heavy equipment essential to the Laboratory. Constructed of macadam with curbs and gutters, the road runs east from Connecticut Avenue into defendants property and thence north along the back line of the property, across the land dedicated to a public alley, to the rear of plaintiff's building. A portion of the fence and road running north is on Government land. In addition to its primary use in servicing the Laboratory's needs, the road has been used since 1957 for trash collection from a chute used by the Evening Star Broadcasting Company, a tenant in plaintiff's building, and to provide access to an oil intake line. The trash chute was constructed with defendants' permission by the Evening Star for the term of its lease.

The oil intake line was installed by the building manager upon the deterioration of the original intake line located at the front of the building.

On October 3, 1962, as part of a larger transaction involving the sale of 78 developed properties for 36 million dollars, plaintiff, together with Real Properties Corporation of America, bought from Garfield Kass, Rose Kass, and Irving Berger all the stock of Park & Shop, thereby acquiring title to the building on the north tract. Both purchasers and sellers were knowledgeable real estate dealers contracting for commercial properties. Although representatives of the plaintiff inspected the property and consulted with defendants, negotiations were conducted by Real Properties. Plaintiff is now the sole owner by virtue of the dissolution of the corporation purchased and the acquisition of the interest therein of Real Properties.

■■ Plaintiff contends that the contract for the sale of the shares of Park & Shop granted an easement by implication over the south tract. Such easements arise when the owner of property subjects one part of his land to a use which benefits another part and subsequently conveys one of these portions. Such conveyance is denominated a severance, and the grantee takes his purchase subject to the *obligations and benefits* appurtenant to the property at that time, Robinson v. Hillman, 36 App.D.C. 241 (1911). The criteria to be considered here in determining whether an easement by implication has arisen are unity of ownership of the two tracts, apparent, continuous, and permanent use of the south tract prior to severance, the necessity of that use to the north tract, and the intention of the parties to preserve said use.

■■ The court finds that plaintiff has failed to meet the burden of establishing the elements of an implied easement. Unity of ownership is absent. The north and south tracts were pur-

chased at separate times, by separate corporations, under separate deeds. Although the stockholders are virtually identical in both corporations, the corporations themselves are separate entities whose integrity has not been successfully challenged. Property acquired by such corporations is owned by them and not by the shareholders, Eichelberger v. Arlington Building, Inc., 52 App.D.C. 23, 280 F. 997 (1922); McAuliffe v. C and K Builders, Inc., 142 A.2d 605 (D.C.Mun. App.1958). Plaintiff's contention that both Kass Realty and Park & Shop were owned by the same persons which would justify a finding of unity of ownership is without merit. The separate deeds and separate treatment of the properties bars any such finding, Times Square Properties v. Alhabb Realty Corp., 117 N.Y.S.2d 901 (1952), aff'd 282 App.Div. 1024, 126 N.Y.S.2d 887 (1953).

■■ There is some conflict in this jurisdiction on the requisite degree of necessity. McPherson v. Acker, MacArthur & Mackey, 150, 48 Am.Rep. 749 (1879), cited with approval in Wilson v. Riggs, 27 App.D.C. 550 (1906), sets a standard of reasonableness. However, Douglass v. Lehman, 62 U.S.App.D.C. 264, 66 F.2d 790 (1933), the most recent ruling on the question, requires strict necessity and is controlling here. While the road might be viewed as strictly necessary to the tenancy of the Laboratory, it is not essential to the operation of the office building itself, which fronts on Connecticut Avenue and was serviced from that access point for the first thirteen years of its existence. It is not alleged that the road is necessary to the operation of the shopping center. Furthermore, the other principal uses to which the road has been put are not persuasive on this issue. Testimony indicated that the fuel supply and the trash removal service could be restored to the front of the building at a relatively nominal cost. To curtail the development of commercially valuable property[1] on the

1. Defendants established that architectural plans and a zoning variance have been obtained for construction of an office building complex with no rear access which would occupy virtually the entire area of the south tract.

theory of strict necessity when in fact the road is essential to only one tenant of a portion of the north tract would be inequitable.

■■ The rationale for the doctrine of implied easements is the effectuation of the intention of the parties at severance, Freightways Terminal Company v. Industrial & Commercial Construction, Inc., 381 P.2d 977 (Alaska 1963). Barring necessity, no easement will be implied where none was intended. Clearly defendants did not intend such an easement. The larger transaction, of which the north tract formed only a part, was directed solely to defendants' developed properties. They retained a number of undeveloped holdings, of which the south tract was only one, for the express purpose of subsequent development. The south tract is located in a commercially valuable area, and it is unreasonable to assume that any experienced real estate dealer would knowingly preclude the development of such a tract by granting, or even intending to grant, the easement claimed.

The evidence lends further credence to this view. The road, lying partially on Government land, was completed about 1953 by the Government. It was built expressly to serve a Government tenant with defendants' permission under what defendants term a "gentlemen's agreement" as to use. Defendants did not build the road themselves to benefit their own property, and the road's location precludes its usefulness to plaintiff without that portion situated on Government land. Use of the road for trash removal and fuel supply was incidental and commenced some five years after the road's completion as the most convenient solution to then current problems. The Government never claimed an easement in the road or even mentioned it in leases for the first ten years of its occupancy. Thereafter, defendants demanded and obtained from the Government annual rental, clearly indicating that as between defendants and the road's builder and principal user no easement was contemplated. In fact, testimony that defendants' attorneys informed plaintiff's attorney prior to settlement that defendants intended to provide access over the road only for the period of years provided by the Government's 1961 condemnation suit was uncontradicted.

Plaintiff's intention is equally clear. Plaintiff's first view of the property revealed an open access to the front from Connecticut Avenue and access to the rear via a road over defendants' property. That property, the south tract, was not an object of negotiation.[2] Plaintiff in surveying the north tract became aware that the rear access was bisected by the north tract's property line but made no further inquiries and sought no easement.

■ The contract for the sale of Park & Shop throws further light on the intention of the parties. Paragraph 18 of the contract, an integration clause, stipulates that the contract and attachments contain the entire understanding of the parties. No mention is made in the contract of the easement claimed. It is well established that implied easements are not favored by the courts as being in derogation of the rule that written instruments speak for themselves, Freightways Terminal Company v. Industrial & Commercial Construction, Inc., supra, at 983. The intention of the parties is further clarified by a meeting held on March 5, 1963. On that date, two weeks prior to settlement, representatives of both Real Properties Corporation of America and plaintiff approved a stipulated settlement of the 1961 condemnation suit providing that the Government pay Kass Realty annual rental for the use of the road. If plaintiff claimed or intended any easement, this was certainly the time to assert it. Plaintiff's approval, prior to final settlement, of a document

2. Defendant, Garfield Kass, testified that late in 1963 an executive of the corporate parent of plaintiff, Instone Bloomfield, visited the south tract and discussed its purchase with plaintiff, but at no time made any mention or claim of an easement over it.

affirming defendants' ownership of the road rebuts his claim to an easement by implication. Consequently, the court finds that no easement was intended and that none can be implied.

Since plaintiff has failed to establish unity of title, necessity of the alleged easement to the use of the property, and any intention that an easement by implication should arise, plaintiff's claim to such an easement must fail. In view of the foregoing, the court finds it unnecessary to consider the question of apparent, continuous, and permanent use of the road.

Accordingly, the complaint to declare an easement, for an injunction and other relief is dismissed.

This memorandum shall constitute findings of fact and conclusions of law.