FORS *v.* FARRELL.

1. Banks and Banking—Stockholders' Double Liability—Insolvency—Creditors—Records.

The right of creditors of an insolvent bank to look to the actual stockholders of the bank for payment of their statutory liability, when properly assessed, cannot be impaired by failure of the bank's records to disclose the true holders of its stock nor by a mere colorable holding of the stock by third persons who hold it for the benefit of the real or actual stockholders as such liability is imposed by law for the benefit of the bank's creditors (3 Comp. Laws 1929, § 11945).

2. Same—Nature of the Double Liability—Evasion.

Although a bank stockholder's liability is contractual in nature, it is one fixed by statute and cannot be nullified by contract nor be evaded by trust devices or other methods of indirect holding (3 Comp. Laws 1929, § 11945).

3. Same—Courts—Protection of Creditors.

In suit brought to enforce bank stockholders' double liability the court will look at the relations of the parties as they actually are, or as, by reason of their conduct, they must be assumed to be, for the protection of creditors (3 Comp. Laws 1929, § 11945).

4. Same—Beneficial Owner of Stock Subject to Double Liability.

The beneficial owner of bank stock is the actual and real owner and is subject to the double liability imposed by statute whether his name appears on the books as owner or not (3 Comp. Laws 1929, § 11945).

5. Same—Holding Companies—State Banks—National Banks.

Evidence that defendant holding company was beneficial owner of State bank stock upon which collection of statutory double

liability was sought by receiver *held*, sufficient, where, among
other facts, it is shown that nominal owner thereof was trustee
for a first holding company, the stock of which was in turn
trusteed exclusively for the benefit of the stockholders of a
national bank under an agreement whereby beneficial owners
agreed to save trustees harmless from loss because of such
stockholding and required that directors of holding company
be stockholders of national bank, and all of the stock of the
national bank, except qualifying shares, was held by defend-
ant, a second holding company (3 Comp. Laws 1929, § 11945).

6. Same—Beneficial Ownership Determined as of Time of Sus-
pension.
    Determination as to beneficial ownership of stock of insolvent
    bank upon which collection of statutory double liability is
    sought by receiver, is made as of the time the bank suspended
    doing business (3 Comp. Laws 1929, § 11945).

7. Same—Intervening Holdings or Trusteeships of Stock.
    In enforcing bank stockholder's double liability it is of little or
    no importance as to how many paper ownerships or holdings
    in trust may intervene between bank which issued stock and
    the ultimate or actual owner thereof (3 Comp. Laws 1929,
    § 11945).

8. Same—Title Illegally Held by Corporation.
    Liability of beneficial owner of bank stock for statutory assess-
    ment thereon is not affected by reason of the fact that title
    thereto came to it through a corporation which could not
    legally take and hold title (3 Comp. Laws 1929, § 11945).

9. Same—National Banks.
    The fact that a national bank has no power to invest in stock of
    a State bank does not lessen the liability of company holding
    all of national bank's stock for stock assessment on the State
    bank stock which was held in trust for company dominated by
    the national bank (3 Comp. Laws 1929, § 11945).

10. Corporations — Recognition of Corporate Entity — Public
Policy.
    Corporate entity will always be recognized by the courts and the
    law administered accordingly unless it appears that the corpo-
    ration is functioning in such a manner as to violate or evade
    the law or contravene public policy.

11. Banks and Banking—Double Liability Not Nullified by In-
direct Holding of Stock.
    Statutory double liability, an incident of ownership of bank
    stock designed to insure stability of banks and protect their

depositors and other creditors, may not be nullified by resort to indirect corporate or trust holdings of such stock (3 Comp. Laws 1929, § 11945).

12. CORPORATIONS—DISREGARD OF CORPORATE ENTITY.
    When a corporation exists as a device to evade legal obligations, the courts, without regard to actual fraud, will disregard the entity theory.

13. SAME—ONE CORPORATION HOLDING ALL OF ANOTHER'S STOCK—MERGER.
    The mere fact that one corporation holds all the stock of another corporation does not of itself nullify or merge the corporate entity of the one whose stock is so held.

14. EVIDENCE—BENEFICIAL OWNERSHIP OF BANK STOCK.
    Receipt of profits or dividends from stock of a State bank by defendant holding company which held all of the stock of a national bank for whose stockholders there was trusteed the stock of a holding company for which nominal owner held stock of the State bank *held*, evidence of beneficial ownership by said defendant.

15. BANKS AND BANKING—HOLDING COMPANIES—BENEFICIAL OWNERSHIP.
    Defendant company which held stock of a national bank *held*, under record presented, beneficial owner of stock of State bank at time it suspended, hence subject to assessment for stockholders' double liability in action by receiver of State bank (3 Comp. Laws 1929, § 11945).

16. SAME—STOCK OWNERSHIP—BENEFITS—LIABILITIES.
    Neither an individual nor a corporation can, through a trust arrangement or by other indirect means or circumlocution, possess as an owner and enjoy beneficial interest in bank stock without assuming the contingent liability for a stockholder's assessment imposed by law, since to hold otherwise would nullify the protection given to the bank's creditors (3 Comp. Laws 1929, § 11945).
    WIEST and BUTZEL, JJ., dissenting.

Appeal from Ingham; Carr (Leland W.), J. Submitted October 10, 1934. (Docket No. 13, Calendar No. 37,921.) Decided May 17, 1935. Rehearing denied June 19, 1935.

Bill by Carl A. Fors, receiver of the American State Savings Bank, against Felix M. Farrell and others to establish liability for bank stock assessment. Decree for plaintiff. Defendants appeal. Affirmed.

*Kelley, Sessions, Warner & Eger,* for plaintiff.

*A. W. Sempliner* and *Wm. Henry Gallagher,* for defendants.

North, J. Plaintiff herein. is the receiver of the American State Savings Bank of Lansing, a Michigan corporation. The bank suspended doing business in December, 1931, and in a suit brought for that purpose, its. stockholders were decreed to pay an assessment equal to the par value of their respective holdings. At that time 5,695 shares of its stock of the par value of $20 each stood in the name of Felix M. Farrell. This stock was issued to him in September and October, 1929, and he held it as agent of, or trustee for, the First National Company of Detroit, now by change of corporate name the Assets Realization Corporation. Unless otherwise indicated we will hereinafter refer to this corporate entity as the First National Company, notwithstanding changes in its corporate name. As set forth in its articles of association, this company was organized for the following purposes:

"To buy, sell, pledge, hold and generally deal in bonds, notes, mortgages, debentures and other evidences of indebtedness, and stocks, investments and securities of every name or nature as agent or broker and to transact all other business incidental to the foregoing."

It is alleged by plaintiff that the First National Company held the American State Savings Bank

stock for and in behalf of the Detroit Bankers Company. The latter company denies this allegation and affirmatively alleges that it was not incorporated until approximately three months after the stock was acquired by the First National Company and that the Detroit Bankers Company was not organized in contemplation of taking over the American State Savings Bank's stock; but instead its organization was effected by an exchange of its stock for at least two-thirds of the stock in each of five separate financial institutions. The articles of incorporation of the Detroit Bankers Company state its purpose as being:

"To acquire, own, hold, vote and exercise all rights of ownership of and to sell and dispose of shares of the capital stock of banks and trust companies and of other corporations or associations engaged in purchasing, selling on their own account or as agents of others, underwriting or dealing in corporate and other securities or of any other corporation engaged in any business or activity incidental to or related to or of assistance in the conduct of any such business aforesaid."

In its articles of association it is further provided that each shareholder of its common stock becomes ratably liable for any statutory liability imposed upon the corporation by reason of its ownership of the capital stock of any bank or trust company, and that such liability may be enforced in the same manner and to the same extent as the statutory liability of the stockholders of such bank or trust company. This provision is also incorporated in each stock certificate issued by the Detroit Bankers Company. From defendants' answers and from plaintiff's amended bill of complaint, as well as from the proofs, it appears that the stock of the First Na-

tional Company (except a small amount for qualifying purposes) has been held in trust since October 20, 1919, by certain individuals for the benefit of the holders of stock of the First & Old Detroit National Bank, now First National Bank-Detroit; and that of the 250,000 shares of outstanding stock of the latter bank, 249,897 are held by the Detroit Bankers Company.

The receiver of the American State Savings Bank being advised that the Assets Realization Corporation and its immediate predecessor, the First National Company of Detroit, were insolvent, so alleges and by this suit seeks to have the Detroit Bankers Company (also certain other defendants) decreed liable for a proportionate share of the assessment made against the stockholders of the insolvent American State Savings Bank. Such liability is asserted on the theory that the Detroit Bankers Company is the beneficial owner of the American State Savings Bank stock issued to Farrell. Liability is also asserted on the theory that the First National Company of Detroit, now the Assets Realization Corporation, is dominated and controlled by the Detroit Bankers Company and is in fact a subsidiary or auxiliary of the Detroit Bankers Company. Plaintiff had decree in the circuit court and defendants have appealed.

Decision in the circuit court was in accord with plaintiff's theory and based upon a finding that the Detroit Bankers Company was in fact and in law the beneficial owner of the stock of the American State Savings Bank outstanding in the name of Farrell as the agent of or trustee for the Assets Realization Corporation; and also on the ground that the Assets Realization Corporation whose stock was trusteed for the benefit of the stockholders of the

First National Bank-Detroit, its stock being now held by the Detroit Bankers Company, was under the domination and control of the Detroit Bankers Company to such an extent as to render the two corporations one in legal contemplation, resulting in liability on the part of the Detroit Bankers Company for the stock assessment. In this appeal the defendants assert that the trial court was wrong in each of these holdings; and that in fact and in law the Assets Realization Corporation, successor to the First National Company of Detroit, is the legal owner of the American State Savings Bank stock issued to Farrell.

Is the Detroit Bankers Company the beneficial owner of the stock issued to Farrell by the American State Savings Bank, and as such liable for the stock assessment? Or, as appellants assert, is the Assets Realization Corporation the holder of this stock and chargeable with the stock assessment?

The creditors of an insolvent bank are vested by law with the right to look to the actual stockholders of the bank for payment of their statutory liability when properly assessed. This right of the creditors cannot be impaired by failure of the bank's records to disclose the true holders of its stock nor by a mere colorable holding of the stock by a third person who in fact holds the stock for the benefit of the real or actual stockholder. A sufficient reason for so holding is that the stockholder's double liability is imposed by law for the benefit of the bank's creditors. While such liability is contractual in nature (*Foster* v. *Row*, 120 Mich. 1 [77 Am. St. Rep. 565]), after all it is one fixed by statutory provision (*McDonald* v. *Thompson*, 184 U. S. 71 [22 Sup. Ct. 297]; *Simons* v. *Groesbeck*, 268 Mich. 495), and cannot be nullified by contract (*Petty* v. *Bay City Bank*, 243 Mich.

362).    Nor can this liability imposed by law be evaded by trust devices or other methods of indirect holding.    The provision of Michigan's banking law as to stockholder's liability (3 Comp. Laws 1929, § 11945, and notes) does not differ materially from the corresponding portion of the National banking law (38 U. S. Stat. p. 273; 12 USCA, § 64, and notes).

"The object of the statute is not to be defeated by mere forms of transactions between shareholders and their creditors.    The court will look at the relations of parties as they actually are, or as, by reason of their conduct, they must be assumed to be for the protection of creditors."    *Pauly* v. *State Loan & Trust Co.,* 165 U. S. 606, 623 (17 Sup. Ct. 465).

"It is well settled, as much as it is possible, that the actual and real owner of stock of a national bank is liable to assessment, whether his name appears on the books as owner or not.    Where such stock is held by one in trust for another, such other is the actual and real owner.    There is no room to question this.    The beneficial owner is the actual and real owner.    * * *    It is unthinkable that a legal owner of such stock can relieve himself of liability by the device of transferring it to another for his benefit. In such case he is as much the actual and real owner as he was before the transfer."    *Keyes* v. *American Life & Accident Ins. Co.,* 1 Fed. Supp. 512.

This phase of the law seems to be well settled. Of many authorities to that effect, the following may be noted:    *Rankin* v. *Fidelity Ins., Trust & Safe Deposit Co.,* 189 U. S. 242 (23 Sup. Ct. 553); *Ohio Valley National Bank* v. *Hulitt,* 204 U. S. 162 (27 Sup. Ct. 179); *Witters* v. *Sowles,* 32 Fed. 130; *Foster* v. *Chase,* 75 Fed. 797; *Lucas* v. *Coe,* 86 Fed. 972; *Houghton* v. *Hubbell,* 33 C. C. A. 574 (91 Fed. 453);

*Corker* v. *Soper* (C. C. A.), 53 Fed. (2d) 190; *Laurent* v. *Anderson* (C. C. A.), 70 Fed. (2d) 819; *Wright* v. *Keene,* 82 Mont. 603 (268 Pac. 545, 60 A. L. R. 109).

In determining the actual character of the holding of the American State Savings Bank stock in the instant case it is important to note that almost from their inception the Assets Realization Corporation and its predecessors in name did not function as independent corporations. Organization of the original company was effected August 28, 1919; and on October 20, 1919, a so-called "general deposit agreement" was consummated. By this agreement its corporate stock (except qualifying shares) was trusteed to five men who were directors of the First & Old Detroit National Bank, now First National Bank-Detroit. This stock has continued to be so held by these trustees or their successors. This general deposit agreement contains the following significant provision:

"No person who is not at the time a director of the First & Old Detroit National Bank, or its successor, shall act as or be appointed a trustee hereunder. When any trustee ceases to be a director of the bank he shall *ipso facto* cease to be a trustee hereunder."

This agreement provided for depositing the stock of the First National Company (now Assets Realization Corporation) with the trustees and its transfer on the corporate records to the trustees or to such persons as they might designate. Even the qualifying shares were to be issued under an agreement for their surrender whenever the holder ceased to be a director. It was also provided in this general deposit agreement that the trustees held the stock deposited with them for the benefit of the stock-

holders of the First & Old Detroit National Bank, now First National Bank-Detroit; and further that one having a beneficial interest in the trust could not "transfer his interest therein, or any part thereof, otherwise than by the transfer of his stock in the First & Old Detroit National Bank." One was not eligible to serve as a director of the First National Company or to continue as such unless he was a stockholder of the First & Old Detroit National Bank. Earnings or dividends of the First National Company could be distributed by the trustees either by payment in gross to the First & Old Detroit National Bank, now First National Bank-Detroit, or by payment to the bank's stockholders as their interests appeared of record. We here note only one other provision of this general deposit agreement. It provided that the persons beneficially interested in the stocks of the First National Company under the said trust should be subject to the same liability upon such stocks as they would have been subject to "in case they had been the owners of record of the shares of said stock corresponding in amount to their beneficial interests in said stocks;" and that such persons would save the trustees harmless "from any loss or liability on account of being holders of record thereof."

Appellants in their reply brief state:

"We admitted our beneficial interest in the stock of the First National Company, in our answer. That is to say we admitted, for the purpose of this case, that the Detroit Bankers Company owned the stock of the First National Company."

If we add to the foregoing the admitted fact that the Detroit Bankers Company is now the holder of practically all of the stock of the First National Bank-Detroit, successor to the First & Old Detroit

National Bank, it would seem that the record fully sustains plaintiff's contention that the Detroit Bankers Company is the beneficial owner of the stock issued by the American State Savings Bank to Farrell.

In arriving at this conclusion we have not overlooked appellants' argument based upon the fact that the corporation now known as the Assets Realization Corporation was organized for a legitimate purpose and many years prior to the organization of the Detroit Bankers Company, and further that the American State Savings Bank stock standing in Farrell's name was purchased three or four months before the incorporation of the Detroit Bankers Company. The rights and obligations of the parties hereto are determined by the status of the corporate relations and of the stockholdings at the time the American State Savings Bank suspended doing business. In that particular the following factual aspect of the case is important. It is conceded and stated in appellants' brief:

"Meanwhile (prior to 1930) the chain idea became implanted in the minds of Michigan bankers and the movement was instituted to tie out-state banks in with the Detroit banks by means of a community of stock interests. The First & Old Detroit National Bank, pursuing this movement, negotiated with the officers of the American State Bank of Lansing, for the purchase of a block of the stock of the latter by the former. When the arrangements were consummated, however, the deal was closed by the First National Company * * * while the stock itself was issued to Felix M. Farrell, agent (September 13, 1929). * * *

"It (Detroit Bankers Company) was organized, as a holding company, on January 8, 1930. It acquired the stock of the First National Bank, and by

virtue thereof became the beneficial owner of the stock of the First National Company. * * * Thenceforth (March, 1930) the First National Company ceased doing an active business, it became a mere holding company.''

At the time the Detroit Bankers Company took over the stock of the First National Bank-Detroit the First National Company, through Farrell as its agent, held the stock in the American State Savings Bank for the benefit of the First National Bank-Detroit. We think, in view of the purpose of its incorporation, the Detroit Bankers Company by taking over the stock of the First National Bank-Detroit, became the beneficial holder and owner of all the assets of the First National Bank-Detroit, regardless of whether such assets stood in its name or were held in trust for it. In this manner the American State Savings Bank stock standing in Farrell's name ultimately came to be beneficially owned by Detroit Bankers Company. The Detroit Bankers Company was entitled to have an accounting to it of all the American State Savings Bank's dividends, and in turn it became liable for the statutory stock assessment. *Simons* v. *Groesbeck, supra.* This conclusion is necessitated by the interrelations of the respective corporate bodies and the character and purpose of the stockholding in the American State Savings Bank at the time the bank closed. *May* v. *McQuillan,* 129 Mich. 392. The priority of corporate organization, the original purpose of incorporating or the purchase of the American State Savings Bank stock three or four months prior to the incorporation of the Detroit Bankers Company are not controlling. In a proceeding to enforce stockholders' liability it is of little or no importance as to how many paper ownerships or holdings in trust may

intervene between the bank that issued the stock and the ultimate or actual owner thereof. The beneficial owner is liable for the stock assessment. And such liability is not affected by reason of title to the stock having come to the present owner through a corporation which could not legally take and hold title thereto. *Lantry* v. *Wallace,* 182 U. S. 536 (21 Sup. Ct. 878). In this case the Detroit Bankers Company's ownership of American State Savings Bank stock came through taking over the stock of the First National Bank-Detroit which latter banking corporation did not have power to invest in the stock of another bank. *Concord First National Bank* v. *Hawkins,* 174 U. S. 364 (19 Sup. Ct. 739). But see, also, *Germania National Bank* v. *Case,* 99 U. S. 628. However, that circumstance does not lessen the liability of the Detroit Bankers Company as a stockholder in the American State Savings Bank.

Corporate entity will always be recognized by the courts and the law administered accordingly unless it appears that the corporation is functioning in such a manner as to violate or at least evade the law or contravene public policy. But statutory double liability has been deemed essential to the stability of banking institutions and requisite for the protection of depositors and other creditors of such corporations. Public policy has been and is deeply concerned in this phase of the law. Surely it was never intended that this wholesome statutory provision should be nullified by resort to indirect corporate holdings of such stock.

"When a corporation exists as a device to evade legal obligations, the courts, without regard to actual fraud, will disregard the entity theory." *People, ex rel. Attorney General,* v. *Michigan Bell Tele-*

*phone Co.*, 246 Mich. 198, 204 (P. U. R. 1929B, 455, P. U. R. 1929E, 27).

Beyond doubt the First National Company was organized for legitimate purposes and functioned in a lawful manner. It may be assumed that at the time the American State Savings Bank stock assessment was made this corporation was properly operating as a holding company, as is asserted by appellants. But notwithstanding its legitimate activities, since its holding of the American State Savings Bank stock was only nominal, its corporate structure cannot be used as a shield behind which an actual and beneficial owner of such stock may escape the statutory liability to the insolvent bank's creditors. To use the holding corporation for that purpose would contravene, and in effect nullify, the double liability provision of the banking act.

"To determine liability under (12 USCA) § 64 (National Banking Act), the courts must disregard the forms of transactions and ascertain who is the real and beneficial holder of the stock. It has long been settled that the real and beneficial holder of bank stock is primarily liable for the double liability. * * *

"A trust (*Corker* v. *Soper* [C. C. A.], 53 Fed. [2d] 190, certiorari denied *Corker* v. *Howard,* 285 U. S. 540 [52 Sup. Ct. 313]) may not be employed to evade double liability. It was said in Lewin on Trusts (13th Ed.), p. 113: 'The court will not permit the system of trusts to be directed to any object that contravenes the policy of the law.' In a learned article in 8 Quarterly Law Review, 220, 225, the author reaches the conclusion: 'If, on the other hand, the so-called trustee is a mere nominee or dummy, put forward for no other purpose but to screen the so-called *cestui que trust* from responsibility, the relation between them is that of principal and agent

and the principal is liable.' Quoted 1 Mechem on Agency (2d Ed.), p. 28, note 31.'' *Laurent* v. *Anderson, supra.*

It is rightly asserted by appellants that the mere fact that one corporation holds all the stock of another corporation does not of itself nullify or merge the corporate entity of the one whose stock is so held, citing *Exchange Bank of Macon* v. *Macon Construction Co.,* 97 Ga. 1 (25 S. E. 326, 33 L. R. A. 800). But aside from the inter-corporate relations hereinbefore noted, this record discloses other facts and circumstances which have a material bearing upon the question as to who was the actual and beneficial owner of this stock in the American State Savings Bank at the time it suspended. Taken singly some of such facts or circumstances may not be very conclusive, but collectively we consider them decidedly persuasive. Among such facts and circumstances are the following: Negotiations for the purchase of the stock in the American State Savings Bank were carried on by the First & Old Detroit National Bank, notwithstanding this purchase was consummated in the name of Farrell as trustee or agent for the First National Company. The minute books of the First National Company disclose no action taken by its board with respect to the purchase of the American State Savings Bank stock or of obtaining any loans with reference to such purchase. The Detroit Bankers Company hired and paid the salary of Mr. William Bowen who was cashier of the First National Company. The Detroit Bankers Company loaned the First National Company at times in excess of $7,000,000 to be used in its operations. Mr. Bowen, who was cashier of the First National Company and at the same time employed by the Detroit Bankers Company, testified:

"When the American State Savings Bank stock was purchased, September, 1929, it was paid for by a check of the First National Bank, except for the 14 shares which were purchased through a broker. * * * The First National Bank purchased stock in quite a number of other Michigan banks. * * * Dividends received by us on the American State Savings Bank stock were set up on our books for the account of the First National Bank."

The full purport of the foregoing must be determined in the light of appellants' admission in their brief that: "It (Detroit Bankers Company) acquired the stock of the First National Bank, and by virtue thereof became the beneficial owner of the stock of the First National Company." Also in the light of the fact that the following dividend checks made payable to Farrell were properly indorsed and deposited by the First National Company in the First National Bank-Detroit:—December, 1929, $9,112; June, 1930, $6,834; January, 1931, $6,834; June, 1931, $5,695. The "general deposit agreement," hereinbefore referred to, provided that the earnings or dividends of the First National Company could be paid over by the trustees to the First National Bank-Detroit or to its stockholders. The Detroit Bankers Company owned the stock of the First National Bank-Detroit, and hence it is obvious that the dividends of the American State Savings Bank paid by its checks to Farrell through the First National Company were finally received by the Detroit Bankers Company. Surely such receipt of profits or dividends is a rather definite indication of beneficial ownership. As noted above, appellants admit that after its organization, January 8, 1930, the Detroit Bankers Company was the beneficial owner of the stock (and therefore of all the assets) of the First National Company; and incident to such beneficial ownership it received the

dividends of the American State Savings Bank. The record contains other facts of like purport which necessitate the holding that the Detroit Bankers Company was the actual beneficial owner of the stock in the American State Savings Bank at the time it suspended.

"And in *Rankin* v. *Fidelity Ins., Trust & Safe Deposit Co.*, 189 U. S. 242, 252 (23 Sup. Ct. 553), the doctrine was stated that a defendant who was in fact the owner of shares of stock could not avoid liability by listing them in the name of another. * * *

"We deem it equally settled, both from the terms of the statute attaching the liability and the decisions which have construed the act, that the *real* owner of the shares may be held responsible, although in fact the shares are not registered in his name. As to such owner the law looks through subterfuges and apparent ownerships and fastens the liability upon the shareholder to whom the shares really belong." *Ohio Valley National Bank* v. *Hulitt, supra.*

Many of the cited authorities and much of the testimony taken have a bearing upon both the question of beneficial ownership of bank stocks and also upon the question of independent corporate entities. In view of our holding on the first of these issues it becomes unnecessary to review the other in detail. We have considered the cases cited by appellants in support of their contention that the real ownership of the American State Savings Bank stock was and is in a corporation other than the Detroit Bankers Company. Appellants rely much upon the following cases: *Exchange Bank of Macon* v. *Macon Construction Co.*, 97 Ga. 1 (25 S. E. 326, 33 L. R. A. 800); *Richmond & Irvine Construction Co.* v. *Railroad Co.*, 15 C. C. A. 289 (68 Fed. 105, 34 L. R. A. 625); *Majestic Co.* v. *Orpheum Circuit, Inc.* (C. C. A.), 21

Fed. (2d) 720; *Allen* v. *Philadelphia Co.* (C. C. A.), 265 Fed. 817; *Martin* v. *Development Co. of America,* 153 C. C. A. 78 (240 Fed. 42). Each of these cases involved contractual rights asserted by the plaintiff, rather than the enforcement of an obligation imposed by law, such as the statutory double liability of holders of bank stocks. For that reason and because of the factual aspect of this case above noted, the cited cases are not here controlling. It all comes to this: That neither an individual nor a corporation can through a trust arrangement or by other indirect means or circumlocution possess as an owner and enjoy the beneficial interest in bank stock without assuming the contingent liability of a stockholder's assessment imposed by law. To hold otherwise would be to nullify the protection given the bank creditors by the statute imposing double liability.

This appeal was taken in behalf of each of the three defendants. The bill of complaint was dismissed as to defendant Felix M. Farrell by the decree in the circuit court. As to the defendant the Assets Realization Corporation, appellants have asked no relief in this court; therefore the decree of the circuit court insofar as it affects this particular defendant will stand affirmed. For the reasons hereinbefore indicated the decree must also be affirmed as to the Detroit Bankers Company. The appellee will have costs.

POTTER, C. J., and NELSON SHARPE and EDWARD M. SHARPE, JJ., concurred with NORTH, J.

BUTZEL, J. (*dissenting*). Under the National banking act the First & Old National Bank of Detroit was precluded from dealing in stocks, bond and investment securities, for a long time considered a very profitable trade, somewhat correlated to, but

distinct from, the banking business. The reciprocal advantages accruing to a large bank and a very closely affiliated investment company were manifest. In 1919 the First National Company of Detroit was organized under the State law, to engage in the buying, selling and holding of stocks and bonds, and for other purposes. Under a general deposit agreement, all of the stock of the First National Company, except qualifying shares, was placed in the hands of trustees who were also directors of the First National Bank, for the benefit of persons who from time to time might hold stock in the bank. The certificates of stock of the bank recited that the holders thereof had a specified proportionate interest in the First National Company. It is not contended that any fraud, concealment or improper motive entered into the conception, organization or conduct of the First National Company. The bank and the company were kept distinctly separate, each having different purposes, officers, offices, books of account and capital. The company did a very large volume of business running into vast sums of money. The claim evidently is not made that the bank could have been held liable for the debts of the company so that the bank's capital and its depositors might be endangered by transactions in which the bank had no power to engage, and which were conducted in the regular course of business of an independent company.

In September and October, 1929, the First National Company purchased stock in the American State Savings Bank of Lansing, by virtue of which the present assessment has been levied. Approximately three months later the Detroit Bankers Company was organized. It acquired substantially all of the stock of the First National Bank, thus becoming

the beneficial owner of the stock of the First National Company, under the deposit agreement above mentioned. The First National Company subsequently turned over its stock and bond business to the First Detroit Company, but retained stocks and bonds of a book value of $6,000,000, including the stock of the American State Savings Bank. From that time the First National Company acted only as a holding company, a purpose permitted by law (2 Comp. Laws 1929, § 9968). Its operations became very limited and it was engaged principally in the liquidation of its assets. The company later changed its name to Assets Realization Company. Because of the limited scope of its operations, but little office space or management was required, and while the company kept in very close communication with its sole stockholder, the Detroit Bankers Company, there was no impropriety in so doing. It remained a distinct entity, and was at no time merged with or absorbed by the Detroit Bankers Company.

It is claimed, however, that as the beneficial owner of the entire stock of the Assets Realization Company, the Detroit Bankers Company was also the real, beneficial owner of the American State Savings Bank stock held by the Assets Realization Company, and is therefore liable for the stock assessment sought to be imposed in the instant case. This claim is based upon the general principle that the actual and real owner of bank stock is liable for the assessment; that such owner cannot relieve himself of liability by the device of transferring the stock to another for his benefit, but the law will look through the subterfuge of pretended ownership to fasten liability upon the real owner. A brief résumé of the leading cases, referred to in the opinion of Mr. Justice North, in which the above principle has been

applied, will indicate their inapplicability to the case at bar.

*Rankin* v. *Fidelity Ins., Trust & Safe Deposit Co.,* 189 U. S. 242 (23 Sup. Ct. 553), *Ohio Valley National Bank* v. *Hulitt,* 204 U. S. 162 (27 Sup. Ct. 179), and *Pauly* v. *State Loan & Trust Co.,* 165 U. S. 606 (17 Sup. Ct. 465), are cases involving the liability of a pledgee of national bank stock. In the *Ohio Valley Case,* where the pledgee because of special circumstances was held to be the true owner of the stock, it was held that he could not escape liability by registering the stock in the name of an employee for the purpose of evading the assessment. In *Foster* v. *Chase,* 75 Fed. 797, one who had purchased national bank stock in the name of his children was held liable for the assessment on the ground that minors could not assent to becoming stockholders. In *Houghton* v. *Hubbell,* 33 C. C. A. 574 (91 Fed. 453), the real owner of bank stock was held liable, although the stock was registered on the books of the bank in the name of his agent. In *Wright* v. *Keene,* 82 Mont. 603 (268 Pac. 545, 60 A. L. R. 109), the assignee of bank stock was held liable as the real owner thereof, although the assignment appeared only on the back of the stock certificate and not on the books of the bank.

In *Keyes* v. *American Life & Accident Ins. Co.,* 1 Fed. Supp. 512, a bank and trust company were merged and stock in each of them was placed in the names of trustees, who in return issued certificates representing 70 per cent. of the stock of the bank and 30 per cent. of the stock of the trust company. A holder of trust certificates was held liable for an assessment levied on the bank stock, in such proportion as that stock was represented in his certificates, on the theory that he was the beneficial owner of the

stock for which the certificates had been issued. The same facts were involved in *Laurent* v. *Anderson* (C. C. A.), 70 Fed. (2d) 819. In *Corker* v. *Soper* (C. C. A.), 53 Fed. (2d) 190, the president and director of a bank issuing new stock did not wish to incur the risk of an assessment by subscribing in his own name. He therefore subscribed as agent of a corporation which he was organizing and paid for the stock with money obtained on his personal note. After the corporation had been organized, with defendant and his two sons as sole stockholders, it ratified the stock purchase and gave him its notes in payment for the subscription. No other corporate action was ever taken by the new company. It issued no stock certificates and kept no books, and the only money it ever possessed was $20 paid by defendant for organization purposes. The company had no assets except the stock in its name, and it had no credit. The court held that the corporation was organized simply for the purpose of holding the stock as agent for defendant, who remained the real owner of the stock at all times; and that the law would look through the subterfuge of pretended ownership to fasten liability on the shareholder to whom in fact the shares belonged.

The above cases are far different from the instant case. The Detroit Bankers Company at no time owned stock in the Lansing bank. It was the beneficial owner of all the stock of the First National Company, subsequently known as the Assets Realization Company, which in turn was a stockholder of the Lansing bank. In none of the above decisions, nor in any other reported case, has it been held that liability for an assessment on bank stock may be imposed upon a person for the sole reason that he is a stockholder in a corporation owning such

bank stock. In *Simons* v. *Groesbeck*, 268 Mich. 495, liability imposed on stockholders of the Detroit Bankers Company for an assessment against bank stock owned by that company was based upon an express contract which provided that the stockholders should be liable for all assessments on stock owned by the Bankers Company. In *Corker* v. *Soper, supra,* defendant's liability was based not on the fact that he was sole stockholder of a corporation owning bank stock, but rather on the fact that he had. organized the corporation for the sole purpose of transferring the bank stock to it, to be held by it as his agent. No such subterfuge can be claimed in the instant case. The First National Company was organized for a legitimate purpose, and not to avoid liability in the purchase of bank stock. It was in existence for over 10 years before the Detroit Bankers Company was organized. It became the owner of the Lansing bank stock in September, 1929, three months before the organization of the Bankers Company, and has been the real, beneficial owner of that stock ever since. That ownership did not change when the Detroit Bankers Company became the sole stockholder of the First National Company. We therefore hold that the Assets Realization Company is the sole, actual and beneficial owner of the Lansing bank stock, and that it alone is liable for the assessment.

The fact that substantially all of the stock of the Assets Realization Company was acquired by the Detroit Bankers Company does not make the latter company the owner of assets held by the former, or liable for its debts. It cannot be claimed, as a general rule, that because a single person owns all of the stock in a corporation, he is the beneficial owner of its assets. The same principle applies to a corpo-

ration owning the entire stock of another corporation. *First National Bank of Memphis* v. *Towner,* 152 C. C. A. 311 (239 Fed. 433); *Eichelberger* v. *Arlington Building, Inc.,* 52 App. D. C. 23 (280 Fed. 997); *Button* v. *Hoffman,* 61 Wis. 20 (20 N. W. 667, 50 Am. Rep. 131); *Brock* v. *Poor,* 216 N. Y. 387 (111 N. E. 229). Nor is there any legal obstacle against the organization of a holding company which may own all of the stock in another corporation. The exception to the rule is stated as follows in *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co.,* 246 Mich. 198, 204 (P. U. R. 1929B, 455, P. U. R. 1929E, 27).

"Where a corporation is so organized and controlled and its affairs so conducted as to make it a mere instrumentality or agent or adjunct of another corporation, its separate existence as a distinct corporate entity will be ignored and the two corporations will be regarded in legal contemplation as one unit."

In *Pittsburgh & Buffalo Co.* v. *Duncan,* 146 C. C. A. 542 (232 Fed. 584), in an opinion written by the late Judge Knappen of the circuit court of appeals for the sixth circuit, it was stated:

"As respects stock ownership and corporate control: The mere fact that the stockholders in two or more corporations are the same, or that one corporation exercises a control over the other through ownership of its stock, or through identity of its stockholders, does not make either the agent of the other, nor does it merge them into one, so as to make a contract of one corporation binding upon the other, where each corporation is separately organized under a distinct charter. *Central Trust Co.* v. *Bridges,* 6 C. C. A. 539 (57 Fed. 753); *Richmond & I. Constr. Co.* v. *Railroad Co.,* 15 C. C. A. 289 (68 Fed. 105, 108, 34 L. R. A. 625); *In re Watertown Paper Co.,*

94 C. C. A. 528 (169 Fed. 252, 255). True, the legal fiction of distinct corporate existence will be disregarded when necessary to prevent fraud, or when a corporation is so organized and controlled and its affairs so conducted 'as to make it only an adjunct or instrumentality of another corporation.' *In re Watertown Paper Co., supra; Gay* v. *Hudson River Electric Power Co.,* 109 C. C. A. 66 (187 Fed. 12, 14); *Foard Co.* v. *Maryland,* 135 C. C. A. 497 (219 Fed. 827, 829). But 'it requires a strong case to induce a court of equity to consider two corporations as one, on account of one owning all the capital stock of the other.' 1 Cook on Corporations (7th Ed.), § 317; and see *Peterson* v. *Railway Co.,* 205 U. S. 364, 393 (27 Sup. Ct. 513).''

The facts in the present case do not bring it within the exception to the rule as above stated. There is no evidence that the First National Company was so organized and controlled and its affairs so conducted as to make it a mere instrumentality, agent or adjunct of the Detroit Bankers Company. The acts cited by plaintiff as showing domination and control, such as the making of recommendations by the Detroit Bankers Company to the First National Company and the lending of assistance in other ways, evidence only the natural interest which a principal stockholder would normally have in preserving the value of his interest as a stockholder, and are not grounds for disregarding the corporate entity. The record shows that the Assets Realization Corporation acted independently, at times refusing to follow the recommendations of the Detroit Bankers Company.

Since there is no evidence that the real ownership of the American State Savings Bank stock was in the Detroit Bankers Company, or that the title to the stock was placed in the First National Company

for any fraudulent purpose whatsoever, or that the First National Company was so organized and controlled and its affairs so conducted as to make it a mere instrumentality or agent of the Detroit Bankers Company, the Detroit Bankers Company cannot be held liable for an assessment levied upon stockholders of the American State Bank. Nor does the fact that the Assets Realization Company, the real owner of the Lansing bank stock, is now insolvent, constitute any legal basis for fastening liability upon the Detroit Bankers Company. In *Pottorff* v. *Dean,* 8 Fed. Supp. 670, the court said:

"The doctrine has never been extended so as to read that there shall at all times be a holder of sufficient financial liability so that he could respond to the assessment."

Again in *Lucas* v. *Coe,* 86 Fed. 972, the court stated:

"The fact that the defendant is responsible and the *cestui que trust* presumably irresponsible is a matter of no moment. There is nothing requiring a shareholder in a national bank to be solvent. * * * The question for the receiver in making an assessment is, who own the shares, not who is best able to pay?"

The decree of the lower court should be reversed, with costs to appellants, and the bill of complaint dismissed.

WIEST, J., concurred with BUTZEL, J. FEAD and BUSHNELL, JJ., did not sit.