BURROWS v. EMERY.

1. BANKS AND BANKING—OWNERSHIP OF STOCK—CONTINGENT LIABILITY FOR ASSESSMENT.

Neither an individual nor a corporation can, through a trust arrangement or by other indirect means or circumlocution, possess as an owner and enjoy the beneficial interest in bank stock without assuming the contingent liability of a stockholder's assessment imposed by law.

2. CORPORATIONS—SEPARATE ENTITY.

Corporations will generally be regarded as a legal entity and courts will ignore the corporate fiction and regard it as an association of persons only where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud.

3. BANKS AND BANKING—LIABILITY OF STOCKHOLDERS OF CORPORATE PURCHASER OF BANK STOCK.

Stockholders of a corporation which had purchased such stock of a bank as latter's stockholders did not care to pay assessment levied by directors thereof, which corporation was actively engaged in securities business at time of acquiring bank stock, *held*, not subject to subsequent assessment levied by commissioner of banking, since corporation was a bona fide entity free from fraudulent intent to evade liability, notwithstanding some directors indorsed corporate note used incident to raising funds to acquire such bank stock.

4. SAME—CORPORATE OWNERS OF STOCK—RECEIVER'S BURDEN OF PROOF.

In bank receiver's suit against stockholders of corporation which had purchased some bank stock to collect assessment levied by commissioner of banking, evidence, including evidence of loss items at or about time of purchase of bank stock, overdrafts occasioned by receipt of securities in transit and holding same temporarily awaiting the purchase price from a customer and some conflicting evidence as to value of securities carried, *held*, insufficient to sustain plaintiff's burden of proving contention that corporation was insolvent at its inception and at time bank stock was purchased incident to his claim that corporation's stockholders were the beneficial owners of the bank stock.

5. CORPORATIONS—FINANCIAL AID OF STOCKHOLDERS—BANK STOCKHOLDERS' LIABILITY.

Financial aid given by stockholders to their corporation would not alone justify court in disregarding corporate entity so as to impose statutory liability for bank stock assessment on stockholders of corporate owner of bank stock.

6. BANKS AND BANKING—TEST OF LIABILITY FOR STOCK ASSESSMENT.

Test of liability for assessment on bank stock is not solvency of transferee but whether one sought to be held liable is in fact the real and beneficial holder of the stock.

7. SAME—TRANSFER OF BANK STOCK—INSOLVENCY.

A holder of bank stock is not deprived of his right to sell stock by fact that the sale is made to an insolvent person, unless it be made with knowledge of the insolvency of the bank.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 6, 1938. (Docket No. 37, Calendar No. 39,953.) Decided June 7, 1938. Rehearing denied October 3, 1938.

Bill by Frank V. Burrows, receiver of the First State Savings Bank of Muskegon Heights, against John G. Emery, Jr., and others, stockholders of Lumberman's Securities Corporation, a corporation, to charge defendants with a stock assessment as joint beneficial owners of stock of First State Savings Bank of Muskegon Heights. Bill dismissed. Plaintiff appeals. Affirmed.

*Alexis J. Rogoski,* for plaintiff.

*Edward C. Farmer, Lou L. Landman* and *Butterfield, Keeney & Amberg,* for defendants.

CHANDLER, J. This action was brought by plaintiff, receiver of the First State Savings Bank of Muskegon Heights, a Michigan banking corporation, against the individual defendants, stockholders of the Lumberman's Securities Corporation, upon the theory that the corporate entity of the securities corporation should be disregarded and the defendants held jointly and severally liable for a 100 per cent. assessment levied by the commissioner of banking upon stock of the First State Savings Bank, 264 shares of which stood in the name of the Lumberman's Securities Corporation, because the individual defendants were the actual or beneficial owners of said stock.

It appears from the record that on July 1, 1930, the National Lumberman's Bank of Muskegon, Michigan, opened a bond department, and from statements found in the minute book about August 5, 1930, it is apparent that the bond department was eventually meant to be incorporated under the name Lumberman's Securities Corporation as a separate entity with control in the bank by tying up the stock of the contemplated corporation with that of the bank. This plan did not materialize in its entirety and the stock of the Lumberman's Securities Corporation was never issued to stockholders of the bank as originally contemplated.

For some six months after its formation, the bond department was operated as a separate division of the bank, making, in that period, gross sales of $677,000 and showing a profit of $3,000 over and above salary and operating expenses which included rental of office space on the second floor of the bank. Thereafter, the Lumberman's Securities Corporation was organized on January 5, 1931, and took over all of the assets and liabilities of the bond department. Defendants herein, with the exception of Mr. Brown, who became a stockholder in February, 1931, together with Messrs. Whiteman, Langeland and Dratz, who have since died and whose estates are not joined in this action, were the original incorporators. These men, with the exception of Mr. Whiteman, were also directors of the Lumberman's National Bank. The corporation had a total authorized capital stock of $40,000 of which $1,400 was paid in, representing 140 shares of no par stock, $100 being paid by each of the shareholders though their checks were not cashed until September, 1933. As stated in the articles of association, the purpose of the Lumberman's Securities Corporation was:

"To buy, sell, pledge, hold and generally deal in bonds, mortgages, notes, debentures and other evidences of indebtedness, corporate stocks and other investments and securities of every name or nature, and to act as agent or broker in any such transactions, and to transact any and all other business incidental to the foregoing."

After its formation, the securities corporation functioned in the same manner as the bond department which it superseded. It maintained the same offices, used the same books, opened a bank account in its own name and kept its securities in its own deposit box. Neither the securities corporation, nor its assets, nor the stock in it after incorporation was carried by the National Lumberman's Bank as an asset of the bank. The securities corporation paid the salaries of its employees, furnished its own office supplies, and paid the bank for the use of the office space. During the first six months of 1931 the corporation did a security sales business amounting to $215,053.24, and in the latter half of that year business in the amount of $504,501.46, or a total of $719,554.70 for the year.

In June, 1931, the First State Savings Bank was in financial difficulty. It was decided to place a 100 per cent. assessment on the capital stock of the bank to meet the crisis and at a meeting attended by defendant Erwin A. Larsen on behalf of the Lumberman's Securities Corporation, Mr. Nelson, representing the commissioner of banking, expressed the belief that a 100 per cent. assessment would put the bank in good condition. An independent examination by Mr. Larsen likewise convinced him that this assessment would place the bank in a favorable financial condition and leave a surplus of $20,000. It was therefore decided at a special meeting of the

board of directors held June 29, 1931, that the securities corporation would acquire not more than 40 per cent. of the stock by paying the assessment if the stockholders did not care to do so, and at the same meeting the officers of the corporation were authorized to borrow the money for the corporation to effectuate the purchase. On July 2d, the members of the Muskegon Clearing House Association, namely, National Lumberman's Bank, Hackley Union National Bank and Muskegon Savings Bank, agreed to pay the assessment levied upon the First State Savings Bank stock in consideration of a transfer of the stock of those stockholders who did not wish to pay the same, and forthwith to transfer 502 shares of said stock to such person, firms, or corporation as the members of the Clearing House Association should designate. Payment of the assessment was ultimately made in the following proportions: 55 per cent. by the Hackley Union Securities Corporation, the stockholders of which were held individually liable on a second 100 per cent. assessment; 35 per cent. by the Lumberman's Securities Corporation; 10 per cent. by F. E. Hammond, trustee. The assessment was levied June 30, 1931, and the securities corporation, on July 2, 1931, placed its check in the amount of $35,000 in the National Lumberman's Bank to the credit of the First State Savings Bank.

The Lumberman's Securities Corporation raised this money in the first instance by cashing a note of the corporation, without any collateral being given, with the National Lumberman's Bank. Five days later, the corporation borrowed $35,000 from the First National Bank of Chicago upon the strength of the indorsement of certain directors of the corporation, defendant Billinghurst and the es-

tates of Dratz and Langeland having already responded upon this guarantee. The note given to the National Lumberman's Bank was thereupon redeemed. Certain of the stockholders of the First State Savings Bank having paid the assessment, the corporation secured a rebate of $4,600 which it applied upon the Chicago debt.

Thereafter four certificates of 10 shares each were issued to defendants Emery, Larsen, Beardsley and Chaddock to qualify them as directors of the First State Savings Bank. Pleading lack of time, Mr. Beardsley's stock was taken over by Mr. Dietrich. This meant that 264 shares of stock were actually issued to the Lumberman's Securities Corporation, and this suit was brought to hold defendants liable for a second 100 per cent. assessment levied upon this stock when the First State Savings Bank was closed in 1933. An unsatisfied judgment for $26,400 has already been recovered against the securities corporation which discontinued its active business in June, 1932, and voted to terminate its corporate life on June 15, 1934, all of its assets having been disposed of or pledged.

The trial court found that the corporation was the beneficial owner of the First State Savings Bank stock and the question of its solvency was immaterial; that in any event the plaintiff had failed to sustain the burden of proof that the securities corporation was insolvent; that the corporate entity of the Lumberman's Securities Corporation was not to be disregarded because the directors had indorsed notes of the corporation to raise funds to make the purchase in question, and accordingly dismissed plaintiff's bill of complaint.

1. Were the defendants the actual or beneficial owners of the First State Savings Bank stock held

by the Lumberman's Securities Corporation and as such liable for the assessment thereon?

In urging an affirmative answer, plaintiff relies most strongly upon the case of *Fors* v. *Farrell*, 271 Mich. 358, and argues that the trial court was in error in not following that case in the instant suit as well as in *Burrows* v. *Le Fevre* in which the circuit court disregarded the corporate entity of the Hackley Union Securities Corporation and held the stockholders thereof liable for their proportionate share of the amount due on the assessment upon the stock of the First State Savings Bank plus interest from the date of the assessment.

A comparison of the facts in the present case with those in the *Fors Case* makes the rule of the latter inapplicable. In the *Fors Case,* Farrell held 5,695 shares of stock of the American State Savings Bank of Lansing as trustee or agent for the First National Company of Detroit. The stock of the First National Company was held in trust for the benefit of the holders of stock of the First & Old Detroit National Bank, later known as First National Bank-Detroit, and 249,897 shares of the outstanding 250,000 shares of stock of that company were owned by the Detroit Bankers Company. The receiver of the American State Savings Bank sought to hold the Detroit Bankers Company liable on an assessment levied upon the American State Savings Bank stock as the beneficial owner of the stock issued by that bank to Farrell. The court found that the First National Company did not operate as an independent corporation and in support of that finding noted that all of its stock was trusteed to directors of First National Bank-Detroit upon condition that the trusteeship would cease if the trustee ceased to be a director; that even the qualifying shares were to be

issued under an agreement for their surrender whenever the holder ceased to be a director; that the trustees held the stock for the benefit of the stockholders of the First National Bank-Detroit; that one could not serve as a director of the First National Company unless he was a stockholder of the First National Bank-Detroit; that earnings or dividends of the First National Company could be distributed by the trustees either by payment in gross to the First National Bank-Detroit, or by payment to the bank's stockholders, and that persons beneficially interested in the stocks of the First National Company should be liable thereon as they would have been "in case they had been the owners of record of the shares of said stock corresponding in amount to their beneficial interests in said stock."

"Negotiations for the purchase of the stock in the American State Savings Bank were carried on by the First & Old Detroit National Bank, notwithstanding this purchase was consummated in the name of Farrell as trustee or agent for the First National Company. The minute books of the First National Company disclose no action taken by its board with respect to the purchase of the American State Savings Bank stock or of obtaining any loans with reference to such purchase. The Detroit Bankers Company hired and paid the salary of Mr. William Bowen who was cashier of the First National Company. The Detroit Bankers Company loaned the First National Company at times in excess of $7,000,000 to be used in its operations."

In the light of these cumulative facts, which with the exception of loans made to the corporation guaranteed by its stockholders are not present here, the court held that the corporate entity of the First National Company should be disregarded and the

Detroit Bankers Company should respond for the assessment on the theory that it was the beneficial owner of the American State Savings Bank stock.

In addition to *Fors* v. *Farrell, supra,* the following cases, relied upon by plaintiff, are to be distinguished from the present suit.

In *Corker* v. *Soper* (C. C. A.), 53 Fed. (2d) 190, Corker formed a corporation for *the express purpose of avoiding double liability* on bank stock to which he was going to subscribe. No other corporate action was ever taken by the company, its stockholders or officers. It issued no stock, kept no books, and the only money it ever had was the organization expenses. It was held that the corporate fiction would not be disregarded but Corker was to be held liable as the true owner of the stock, the court saying:

"For while the things done did place the certificates of stock in the name of the Laurens Company, they did not divest appellant of his beneficial ownership of them, but left him the real owner, and therefore liable to assessment."

In *Metropolitan Holding Co.* v. *Snyder* (C. C. A.), 79 Fed. (2d) 263 (103 A. L. R. 912), it was held that the contingent liability on shares of stock in a national bank cannot be circumvented by the organization of a holding company, and directors of the bank who have organized such a company to purchase shares of stock, even though in good faith, will be held liable where the directors knew the bank was in a precarious position. Here the representative of the Lumberman's Securities Corporation was informed, and from his own investigation believed, that the first 100 per cent. assessment would place the First State Savings Bank in a good financial

condition. Furthermore, the corporation was actively engaged in the securities business when it purchased the bank stock in 1931.

In *Barbour* v. *Thomas* (C. C. A.), 86 Fed. (2d) 510, a holding company was created and exchanged its stock for that of five Detroit banks. The only asset of the holding company was the bank stock and some $1,200 raised by issuing so-called "trustee" shares. The expenses of the holding company were met by contribution from the five member banks, and the stockholders expressly assumed the same liability enforceable against banks and trust companies. In holding the stockholders individually liable for bank assessments the court relied upon the express assumption of liability and pointed out that to permit stockholders to transfer their bank stock to a holding company, which stock constitutes its sole asset, would be to defeat the protection contemplated by the double liability statutes. Here, there was no assumption of individual liability by the shareholders, and it dealt in a wide variety of stocks and bonds pursuant to the terms of its creation.

A similar situation was present in *Nettles* v. *Rhett* (C. C. A.), 94 Fed. (2d) 42, where the receiver of an insolvent bank brought suit against the stockholders of a holding company in order to secure a decree that they were the beneficial owners of 74,000 shares of bank stock and thus recover upon an assessment. Judgment against the corporation for that amount had already been obtained and returned *nulla bona.* The court cited *Fors* v. *Farrell, supra,* and held that inasmuch as the holding company invested in nothing but bank stock, the defendants could not set up the corporation as a shield to defraud depositors of their statutory security.

These and other cases cited by plaintiff, may be summed up in the statement of Justice NORTH in

*Fors* v. *Farrell, supra,* 375, "That neither an individual nor a corporation can through a trust arrangement or by other indirect means or circumlocution possess as an owner and enjoy the beneficial interest in bank stock without assuming the contingent liability of a stockholder's assessment imposed by law. To hold otherwise would be to nullify the protection given the bank creditors by the statute imposing double liability." This rule is not meant to lend aid to an effort to attack a bona fide corporate entity and hold shareholders of that corporation liable for a bank assessment levied upon bank stock which the corporation owns.

"The corporation will be regarded as a legal entity as a general rule, and the courts acting cautiously and only when the circumstances justify it, will ignore the fiction of corporate entity, where it is used as a blind or instrumentality to defeat public convenience, justify wrong, or perpetrate a fraud, and will regard the corporation as an association of persons." *Majestic Co.* v. *Orpheum Circuit, Inc.* (C. C. A.), 21 Fed. (2d) 720, 724. See, also, *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co.,* 246 Mich. 198 (P. U. R. 1929 B, 455, P. U. R. 1929 E, 27).

The liability of holders of stock in a bankrupt corporation is defined in these words in *Simons* v. *Groesbeck,* 268 Mich. 495:

"While it is generally true that the holders of the bankrupt corporate stock are not liable to assessment, yet where the power to make such assessment upon fully paid up stock is conferred by corporate charter or by the articles of association of the corporation or by a valid statute or by consent of the stockholders or members of the corporation, such liability is enforceable."

Here the stockholders did not assume liability for an assessment and the history of the corporation persuades one to believe that it enjoyed a bona fide existence free from fraudulent intent to evade liability. This conclusion is heightened by the recognition of liability upon surety obligations undertaken in some of the transactions entered into by the corporation.

2. In support of his argument that defendants were the beneficial owners of the First State Savings Bank stock, plaintiff attempted to prove that the Lumberman's Securities Corporation was insolvent at its inception and at the time the stock was purchased. The record shows that the corporation carried a loss item of $191.30 on June 29, 1931; $37.62 on June 30th; $37.62 on July 1st; $118.96 on July 2d; $148.01 on July 3d. To show insolvency plaintiff introduced expert evidence that cost prices at which securities were carried were too high, but this testimony was controverted by an expert witness for the defendants. However, the record further shows that in several instances where witness Harper for plaintiff placed lower values on the securities, his company purchased the very same securities from the securities corporation at their listed value.

Plaintiff likewise contended that overdrafts with the National Lumberman's Bank, well over $10,000, were indicative of insolvency. However, defendants explained that these overdrafts were occasioned by the receipt of securities in transit and the holding of the same temporarily awaiting the purchase price from a customer. There seems to be no reason to disturb the finding of the lower court that the plaintiff failed to sustain the burden of proof in his effort to prove the Lumberman's Securities Corporation insolvent at the time the bank stock in question was purchased.

Nor would financial aid given to the corporation by its stockholders justify the court in disregarding the corporate entity. *Gledhill* v. *Fisher & Co.*, 272 Mich. 353 (102 A. L. R. 1042); *Hooper-Mankin Co.* v. *Matthew Addy Co.* (C. C. A.), 4 Fed. (2d) 187. See, also, *Berkey* v. *Railway Co.*, 244 N. Y. 84 (155 N. E. 58, 50 A. L. R. 599).

Furthermore, the test of liability is not the solvency of the transferee, but whether the one sought to be held liable is in fact the real and beneficial holder of the stock. *Fors* v. *Farrell, supra.*

"We think it a proper deduction from the prior cases, and such we hold to be the law, that the gist of the liability is the fraud implied in selling, with notice of the insolvency of the bank and with intent to evade the double liability imposed upon the stockholder by the national banking act. In short, the question of liability is largely determinable by the presence or absence of an intent to evade liability. The fact that the sale was made to an insolvent buyer is doubtless additional evidence of the original fraudulent intent, but would not be in itself sufficient to constitute fraud without notice of the insolvency of the bank. The stockholder is not deprived of his right to sell his stock by the fact that the sale is made to an insolvent person, unless it be made with knowledge of the insolvency of the bank." *McDonald* v. *Dewey*, 202 U. S. 510, 526 (26 Sup. Ct. 731, 6 Ann. Cas. 419). See *Lucas* v. *Coe*, 86 Fed. 972; *Pottorff* v. *Dean*, 77 Fed. (2d) 893.

The decree is affirmed, with costs to appellees.

Wiest, C. J., and Butzel, Bushnell, Sharpe, Potter, North, and McAllister, JJ., concurred.