LUDINGTON STATE BANK *v.* ESTATE OF RATH.

1. BANKS AND BANKING—LIABILITY FOR STOCK ASSESSMENTS.
   Generally the record holder of bank stock is the party liable for assessment thereon.

2. WILLS—EFFECT.
   A will speaks from the death of the testator.

3. SAME—BANK STOCK.
   Under will specifically bequeathing bank stock to testator's nieces but leaving widow unrestricted use and net income of all his property, real and personal, during her lifetime, title of stock vested in legatees at testator's death subject to widow's interest and testator's debts.

4. BANKS AND BANKING—ASSESSMENT ON STOCK—WILLS.

After death of widow, to whom testator had left unrestricted use and net income of all his estate, and probate court had granted authority to assign bank stock to testator's nieces, specific legatees thereof, and assignment was made but bank refused to transfer stock, estate *held*, not liable for assessment thereafter made, since such stock is assessable in the hands of the real parties in interest.

Appeal from Mason; Cutler (Hal L.), J. Submitted October 11, 1935. (Docket No. 68, Calendar No. 38,488.) Decided January 31, 1936.

O. C. Zook, conservator of the Ludington State Bank, presented a claim in the probate court against the estate of.William A. L. Rath, deceased, for bank stock assessment. Claim denied. Plaintiff appealed to circuit court. Judgment for defendant. Plaintiff appeals. Affirmed.

*K. B. Mathews,* for plaintiff.

*A. A. Keiser,* for defendant.

*Alfred H. Handrich,* for residuary legatee.

*David H. Crowley,* Attorney General, *Edmund E. Shepherd* and *Peter J. Monaghan, Jr.,* Assistants Attorney General, *amici curiæ.*

POTTER, J. William A. L. Rath died testate August 10, 1916. At the time of his death, he owned 180 shares of stock of the Ludington State Bank, of the par value of $100 a share. By his last will and testament, he left his widow the unrestricted use and net income of all his property, real and personal, during her lifetime. He provided by his will for the payment of specific legacies as follows:

"To my niece, Jessie M. Dolan, 80 shares of stock of Ludington State Bank, 63 shares of stock of Bank of Fountain; cash money to be paid to her $5,000.

"To my niece Grace B. Dolan 100 shares of stock of Ludington State Bank; cash to be paid to her $5,000."

This will was probated, and May 23, 1932, his widow died. The inheritance tax was paid upon these specific legacies in 1917. Both of the legatees demanded the delivery of the stock to them.

After the death of testator's widow, the executor of the estate of William A. L. Rath, August 4, 1932, petitioned the probate court of Mason county for authority to transfer the stock in question to the legatees in accordance with the terms of testator's will. August 11, 1932, the probate court entered an order authorizing and empowering the executor of the estate to transfer the bank stock in question to the legatees named in the will. The executor of the estate assigned the stock certificates to the legatees, and the cashier of the Ludington State Bank witnessed the assignment of these certificates by the executor. The executor tendered the certificates in question to the Ludington State Bank for transfer upon the books of the bank, but the stock was not transferred.

The Ludington State Bank was closed by executive proclamation of the governor, along with all other banks. A conservator was appointed to take over the custody and management of the bank March 27, 1933, and by the order appointing the conservator he was authorized to continue the operation of said bank under the terms and conditions prescribed in the proclamation of the governor of February 21, 1933, except as modified by the proclamation of the governor of March 22, 1933, until the further order of the commissioner of banking.

The bank continued to operate. A cursory examination of the bank's assets was made, and the commissioner ordered an assessment of 100 per

cent. on each stockholder of the bank, stating in the notice of the assessment it was a personal liability of the stockholders. A plan of reorganization was adopted. The creditors of the bank agreed to take 50 per cent. in time certificates of deposit and 50 per cent. of the total amount of their claims in certificates of participation issued therefor in pursuance of the trust agreement constituting a part of the plan of reorganization.

July 1, 1933, the bank was authorized to reopen. The trust agreement recited:

"Whereas the commissioner under and by virtue of the provisions of Act No. 32, Pub. Acts 1933, and/or Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), has segregated that portion of the assets of the bank set forth in exhibit A, hereto attached and made a part hereof, and has deemed it necessary and advisable to and has created the trust herein set forth relating to and concerning the said segregated assets of such bank on the terms and conditions herein set forth; and

"Whereas an assessment on all of the capital stock of said bank equal to 100 per cent. of the par value of such stock has been levied, the proceeds thereof to be paid to said bank, and may by said bank be transferred to the trust fund herein created on the order of the commissioner;" etc.

Notice of this assessment was served upon the executor of the estate of deceased. An application was made to the probate court for the purpose of reopening the estate for the presentation of claims against it. An order was made reopening the estate, and a claim was presented by the bank against the estate of deceased so far as this stock is concerned in the sum of $18,000. The allowance of this claim was objected to by the estate of deceased for the reason the stock was not subject to assessment under the legal status of the bank; the

law did not authorize any assessment of such stock unless and until the capital stock of the bank had been impaired so as to endanger the rights of depositors, and there was no affirmative showing that such condition existed; such stock at the time said assessment was attempted to be made was not legally owned by said estate; and the title thereof had been actually and legally transferred to the legatees to whom it was given by the will of deceased. Objections were also filed to the allowance of the claim on the part of other legatees named in the will of deceased.

The claim was disallowed by the probate court August 10, 1933, and plaintiff, Ludington State Bank, took an appeal to the circuit court for the county of Mason, claiming the probate court erred in holding the stock in question was not the property of the estate; in holding that Act No. 32, Pub. Acts 1933, was unconstitutional; in holding there was no showing of any necessity for the levying of the assessment; in holding the. banking commissioner of the State was without authority to levy and collect said assessment; in deciding the estate was not indebted to claimant in the sum of $18,000; in holding the assessment upon the 180 shares of capital stock of the Ludington State Bank was not a valid claim against the estate; in denying the claim of claimant; and in deciding the estate was not barred from denying the validity of the claim by failure to comply with the requirements of Act No. 32, Pub. Acts 1933, as amended, by failing to file objections to said assessment in the circuit court for the county of Mason, in chancery, within the time limited by the published notice of claimants.

This appeal came on to be heard in the circuit court where the claim was disallowed, and plaintiff appeals.

Though it is generally true that the record holders of certificates of shares of stock in a bank are liable for the assessment, in this case the last will and testament of the deceased gave this stock specifically to the legatees named therein. The will speaks from the death of the testator. The title to this stock vested in the legatees at the death of the testator, subject to the life interest of the widow of deceased and subject to be divested in case it was necessary to have resort thereto for the purpose of paying the debts of the estate. As between the estate and the legatees, the property was treated as the property of the legatees. Title to such stock passed to the legatees under the will and by operation of law. The bequests were specific and the legatees did all in their power, short of instituting suit, to procure the transfer of the stock in question to them of record on the books of the bank. They demanded delivery of the same to them. An order of the probate court was made directing the executor to assign the stock to them. The stock was so assigned. The executor presented the certificates for transfer to the bank, but it neglected and refused to transfer them.

Under the facts in this case, the estate of the deceased was not liable for any assessment upon this stock. *Gibson* v. *Oswalt,* 269 Mich. 300. If the stock itself was assessable, it was assessable in the hands of the true owners thereof because, after all, the State is not interested in technicalities and if a liability exists, its purpose and object is to reach the real parties in interest and impose the legal liability, if any, to pay the assessment upon them. The trial court arrived at a correct conclusion.

Judgment affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY JJ., concurred.