McKinstry et al. *v*. Russell, Executor

[No. 17,022.    Filed June 14, 1943.    Rehearing dismissed
October 12, 1943.] ·

*Seebirt, Oare & Deahl,* of South Bend, for appellants.

*Verne G. Cawley,* of Elkhart, for appellees.

CRUMPACKER, P. J.—This appeal was taken from a judgment of the Elkhart Superior Court in an action based on a claim against a decedent's estate to enforce the super-added liability incident to ownership of capital stock in banks organized under the laws of the State of Michigan. The appellants are Mark S. McKinstry, Benjamin S. Peck and Claus H. Kruizenga, as Trustees of the segregated assets of the Home Savings Bank of Kalamazoo, Michigan, an insolvent institution, to whom the claim involved in this litigation has been assigned in accordance with a plan for the reorganization of said bank promulgated by the Commissioner of the State Banking Department of the State of Michigan. The appellee is Lawrence M. Russell, as executor of the last will and testament of Agnes B. Russell, deceased, against whose estate said claim was filed. The cause was tried to the court upon an amended statement of the claim to which no answer was addressed. The finding was for the appellee and, over the appellants' motion for a new trial, the court entered judgment that said appellants take nothing by reason of their said claim and that appellee recover costs. Appellants' motion for a new trial alleges (1) that the decision of the court is not sustained by sufficient evidence, and (2) that the decision of the court is contrary to

law. The trial court's action in denying this motion presents the sole error relied upon for reversal.

There is little dispute as to the facts material to the issues and from the record and briefs of counsel it appears that the Home Savings Bank of Kalamazoo, Michigan, prior to February 14, 1933, was a bank organized under the laws of the State of Michigan and doing business in the city of Kalamazoo. That upon its organization one William H. Russell, a resident of Elkhart, Indiana, became the owner of 30 shares of the capital stock of said bank and continued to be the owner thereof until he died on May 3, 1929, leaving a last will and testament whereby he devised and bequeathed to his wife Agnes B. Russell all of his real and personal property "for and during her natural life, only." Upon the death of his said wife, he gave the residue of his personal property and the remainder of his real estate in fee simple to his children Fred E. Russell, Lawrence M. Russell, Margie Kimball and Joel Russell. The said Joel Russell died prior to the death of his father leaving a son and daughter, David Russell and Mary Russell as his sole and only heirs at law. The will of the said William H. Russell nominated his widow, Agnes B. Russell, and his son, Fred E. Russell, as the executors thereof, and on June 13, 1929, they duly qualified as such in the Elkhart Superior Court where said will was admitted to probate on the same day. In due course said executors filed an inventory of the personal property of said decedent and a schedule of all his assets and liabilities for inheritance tax purposes, in both of which documents 20 shares of the bank stock above mentioned was included and their value fixed at $100 per share. During the period from June 13, 1929, until June 27, 1930, said executors collected and charged themselves with the receipt of four quart-

erly dividends paid on said bank stock in the sum of $75.00 each, and on said 27th day of June, 1930, they filed what they chose to call a "Final Report" in which they charged themselves with a surplus personal estate of $52,306.61, including 20 shares of said bank stock at its face value of $2,000. Account for the remaining 10 shares of said stock held by the said William H. Russell at the time of his death was omitted from the inventory, schedule of assets and final report purely through the inadvertence and mistake of said executors. Said report recites that more than one year has elapsed since the grant of letters testamentary and due publication of notice thereof; that all the debts of said estate have been paid and the assets thereof fully administered upon, save as to the distribution of said surplus. After describing the testator's real estate and showing its disposition under the terms of the will, said report concludes with the following: "That by reason of the fact that a portion of the net estate of the testator is composed of personal property and no trustee is named in said will, it will be necessary for said estate to remain open during the lifetime of said Agnes B. Russell." The prayer is for approval of the account in final settlement of said estate and that the same may be "continued for the purpose of investing and reinvesting the funds now in their possession, and to pay the net income therefrom to the said Agnes B. Russell." Notice of a hearing on this report was published and posted as required by the law pertaining to the final settlement of decedents' estates, and on September 15, 1930, the court entered an order in the premises, of which the following excerpt is pertinent to the questions here involved:

"Come now said executors and submit to the Court their final report and vouchers, heretofore filed herein, and the Court having examined the same and being well and sufficiently advised in the

premises, now finds that more than one year has elapsed since the granting of letters testamentary upon said estate and the due publication of notice thereof. And the Court now in all things approves the said final report, together with all the acts of said Executors as by them reported.

"The Court now orders that this estate be continued for further administration under the last Will and Testament of said decedent.

"Come now said executors and file their additional bond in the penal sum of $65,000.00 with London and Lancashire Indemnity Company of America as surety thereon, said bond being set out as follows, to-wit:— (here insert), and which bond the Court now approves."

Thereafter said Agnes B. Russell and Fred E. Russell, designating themselves executors of the estate of William H. Russell, deceased, continued to control and manage the personal property of said decedent in such manner as their judgment dictated until the death of the said Agnes B. Russell, the life tenant, on April 16, 1939. From July 1, 1930, to April 1, 1932, they received an additional eight quarterly dividends of $75.00 each on the bank stock in controversy which were deposited to the credit of said executors in the St. Joseph Valley Bank at Elkhart, Indiana. That at all times during the history of the transactions here involved there was in full force and effect in the State of Michigan a statute providing as follows:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one (1) for another, to satisfy the obligations of said bank to the amount of their stock; but persons holding stock as executors, administrators, guardians or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent

as the testator, intestate, ward or person in such trust funds would be, if living, or competent to act; and the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said Bank."

On February 14, 1933, all banks in the State of Michigan were closed by order of the Governor and, upon examination by the State Banking Department, the Home Savings Bank of Kalamazoo was not permitted to reopen, and the commissioner of said department appointed a conservator to take over the management and liquidation thereof. Thereafter a plan for the reorganization of said bank was formulated and notice thereof published in a Kalamazoo newspaper and posted at the front door of the bank and also inside thereof from July 26, to September 11, 1933. As a part of such plan of reorganization it was provided that said commissioner should "immediately levy and proceed to collect a 100 per cent assessment against the stockholders of said bank." Such assessment was so levied on July 25, 1933, and included in its scope the 30 shares of stock owned by the said William H. Russell at the time of his death. Thereafter on November 9, 1934, the claim here involved was assigned to the appellants in accordance with a trust agreement executed between them and said bank as a part of said reorganization plan. At no time after the death of said William H. Russell, or after the alleged final settlement of his estate on September 15, 1930, did Agnes B. Russell and Fred E. Russell, as executors of the estate of said decedent, make any effort to have said bank stock transferred to them as such executors, nor at any time did any of the legatees under the will of said decedent,

including the life tenant, make such effort, and said stock still remains registered on the books of the bank in the name of William H. Russell. After the so-called final report of June 27, 1930, was approved by the court and the estate of William H. Russell ordered "continued for further administration under the last will and testament of said decedent," said executors filed a series of current reports as to the status of the property in their hands in which Agnes B. Russell had a life estate, accounting for all receipts, including the dividends above mentioned, and showing payment to her of the net income therefrom. Beginning July 26, 1933, and at infrequent intervals thereafter, the conservator in charge of the liquidation of said bank wrote letters addressed to "Wm. H. Russell Estate, Elkhart, Indiana," stating that the assessment above described had been levied and asking that it be paid. As a result of such solicitation said executors went to Kalamazoo and talked with one Van Bochove, a representative of the conservator, at which time they stated they could not pay said assessment. Later they reported to the court that such assessment had been levied against said bank stock and that they had elected to permit the same to be sold for the nonpayment thereof. On April 16, 1939, Agnes B. Russell, the life tenant and one of the executors of the William H. Russell estate, died and on May 27, 1939, one Charles H. Schutz, designating himself "Liquidator of the Segregated Assets of the Home Savings Bank of Kalamazoo, Michigan," filed a claim against the William H. Russell estate to recover said stock assessment. On May 31, 1939, Fred E. Russell, the surviving executor, filed what he termed a "Supplemental Final Report," and notice of its filing and the day fixed by the court for a hearing thereon was published and posted as required by law. This report, how-

ever, has never been presented to the court for approval and, after a period of more than four years, it is still pending in the Elkhart Superior Court undisposed of. On June 20, 1939, Fred E. Russell, said surviving executor, filed a verified motion to strike the Schutz claim from the files of the estate and the claim docket of the court on the grounds that said claim had not been filed at least thirty days prior to the filing of the "Supplemental Final Report" as the law requires. This motion was sustained by the court and the said claim was ordered stricken from the records as barred by § 6-1001, Burns' 1933, § 3119, Baldwin's 1934, requiring claims against estates to be filed "at least thirty days before final settlement." No exception was taken to this ruling and no appeal taken from the court's order. The authority of said Schutz to file the claim above described is disputed by the appellants but the payment by Schutz of attorney's fees in connection therewith was subsequently approved by them. Agnes B. Russell died testate, her will was probated in Elkhart Superior Court, and the appellee Lawrence M. Russell was duly appointed the executor thereof, and thereupon the appellants instituted the present litigation which was disposed of by the trial court in the manner we have heretofore indicated.

The appellants contend that the solution of the questions involved in this appeal is governed by the law of Michigan, and that, on the facts above stated, the law of that state vested the equitable and beneficial ownership of the bank stock about which this controversy turns in Agnes B. Russell, the widow of William H. Russell, immediately upon his death, subject to divestment only in the event the use of such bank stock was necessary to pay his debts; that the William H. Russell estate was finally settled and fully administered on Sep-

tember 15, 1930, at which time said bank was wholly solvent and no liability incident to the ownership of its stock had accrued; that when the debt herein sued on came into existence on July 25, 1933, Agnes B. Russell was the owner of the equitable and beneficial interest in said stock and, therefore, her estate is liable for the payment of the assessment levied thereon; that as the successor of William H. Russell in the equitable ownership of said stock she became bound by the contract imposed upon him by law when he bought it, and liability for the payment of said assessment was her obligation at the time of her death. The appellants further contend that even though it should be held that Agnes B. Russell never became the owner of said stock this action is justified by § 6-1901, Burns' 1933, § 3265, Baldwin's 1934, which provides: "The heirs, devisees and distributees of a decedent shall be liable, to the extent of property received by them from such decedent's estate, to any creditor whose claim remains unpaid, who, six months prior to such final settlement, was . . . out of the state; . . . Provided, That suit upon the claim of any creditor out of the state must be brought within two [2] years after such final settlement."

On the other hand, the appellee insists that the law of Indiana must control this court's decision on the essential questions involved and that, under the law of this State, Agnes B. Russell never became the owner, either legal or equitable, of said bank stock; that whatever claim the appellants have is properly a claim against the estate of William H. Russell and, having failed to file it more than 30 days prior to the filing of the executor's final report on May 31, 1939, it is barred by the statute of limitations heretofore mentioned; and that the nonresident statute upon which the appellants rely

(§ 6-1901, Burns' 1933, § 3265, Baldwin's 1934) has no application because, to all legal intents and purposes, said appellants were not out of the state of Indiana for six months prior to the final settleemnt of the William H. Russell estate in that their claim was filed three days prior to the filing of the executors' final report; and that in so doing they became residents of the State of Indiana as far as the application of said statute is concerned.

There seems to be some conflict between the law of Indiana and the law of Michigan as to the circumstances under which one is deemed to be the owner of capital stock in a bank and thereby subject to the so-called "double liability" incident to such ownership. That being true it becomes important at the very outset to determine the controlling jurisdiction. The Home Savings Bank of Kalamazoo is a Michigan corporation and the owners of the William H. Russell stock in said bank, whether they be his executors, his heirs or legatees, are residents of the State of Indiana. When the said William H. Russell acquired the stock in controversy he entered into a relationship contractual in its nature and the provisions of the statute of the State of Michigan governing his obligations as a stockholder entered into that contract. In *Richmond v. Irons* (1887), 121 U. S. 27, 30 L. Ed. 864, the Supreme Court of the United States, in construing the national banking act, said: "Under that act the individual liability of the stockholders is an essential element in the contract by which the stockholders become members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the

corporation. There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect, and be as binding in all respects, as any other contracts of the individual stockholder." It seems clear to us that the validity of the claim which the appellants here assert, being based on a Michigan contract of which a Michigan statute is a part, must be determined by the law of Michigan. The substantive rights and liabilities of the parties are fixed by the law of that state, while the matter of procedure alone is controlled by the law of this forum. *Broderick* v. *Rosner* (1935), 294 U. S. 629, 100 A. L. R. 1133; *Modern Woodmen* v. *Mixer* (1925), 267 U. S. 544, 69 L. Ed. 783, 9 C. J. S. 170, and cases cited.

In taking a contrary position on this question, the appellee relies upon *Beasley's Estate* v. *Rauch, Rec.* (1937), 104 Ind. App. 312, 11 N. E. (2d) 60, and *Pufahl* v. *Estate of Parks* (1936), 299 U. S. 217, 81 L. Ed. 133. In the first of these cases the receiver of an insolvent national bank asserted a claim based on an unpaid stock assessment against the administrator of ·Beasley's estate. The claim was not filed more than thirty days prior to the final settlement of such estate, and the court held that it was barred by the Indiana statute of limitations pertaining to when claims against decedents' estates should be filed. There was question raised as to the applicability of the Indiana statute to a claim arising by virtue of federal enactment which the court resolved in favor of the estate. The question decided was merely a matter of procedure and in nowise involved the validity of the receiver's claim or the substantive rights and liabilities of the parties. *Pufahl* v. *Estate of Parks, supra,* also involves the law applicable to the rights and liabilities of the holder of stock in a

national bank and in the course of the court's opinion we find this language:

> "Although the petitioner's demand is based upon a federal statute, he may enforce it only in conformity to the law of the forum governing the recovery of debts of like nature. He might have sued in a federal court. Notwithstanding the statute providing that the citizenship of a national bank, for purposes of federal jurisdiction, shall be as if it were a corporation of the state where it has its place of business, the receiver is an officer of the United States and, as such, entitled to sue for assessments in a federal court, irrespective of the citizenship of the parties or the amount in controversy. If he elect as to do, R. S. 721 (28 U. S. C. § 725) governs the trial:
>
> " 'The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply.'
>
> "In such a proceeding the state statute of limitations will be applied; and it seems that the local substantive law governing property rights in stock will be observed."

Thus it becomes apparent that the application of the substantive law of the state to causes of action arising by virtue of a federal statute is by reason of special congressional legislation, and that the Pufahl case has no concern with a conflict between the laws of the several states.

The Michigan statute upon which the appellants rest their claim is 3 Comp. Laws 1929, § 11945; Stat. Ann., § 23.52, and has heretofore been set out in full. That part of it pertinent to the question now under consideration reads as follows: "The stockholders of every bank shall be liable individually, equally and ratably, and not one for another, to satisfy

the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock." In construing this statute the Supreme Court of Michigan has said that the word "stockholders" as therein used means the actual stockholders at the time the bank suspends operations and that no certificate is essential to transfer title to bank stock, as such certificate is merely evidence of ownership and does not constitute the stock itself, nor is it essential to the stock's existence (*Glass* v. *Lock* (1938), 286 Mich. 628, 282 N. W. 845; *Foster* v. *Row* (1899), 120 Mich. 1, 79 N. W. 696); and one may be a stockholder in a bank although he is not so recorded on the books of the corporation. *Gibson* v. *Oswalt* (1934), 269 Mich. 300, 257 N. W. 825. It was said in *Ludington State Bank* v. *Estate of Rath* (1936), 274 Mich. 463, 264 N. W. 865, that the object and purpose of the statute is to enable creditors to reach the real parties in interest and impose upon them whatever legal liability there may be to pay the assessment. The test determining the applicability of the statute is whether the one sought to be held liable is in fact the real beneficial owner of the stock. *Burrows* v. *Emery* (1938), 285 Mich. 86, 280 N. W. 120.

In the instant case the evidence is undisputed that the bank stock was never transferred to Agnes B. Russell on the books of the corporation, nor was a certificate ever issued to her. It is further undisputed that the original certificates issued to William H. Russell have never been in her individual possession but have remained continuously in the possession of the executors of the William H. Russell estate from the date of his death until the present time. But such facts, as we have seen above, are not controlling in determining her obligation to pay the assessment here in litigation. That question turns upon the fact

as to whether or not she was the "real and beneficial owner of the stock" at the time the bank suspended operations. *Glass* v. *Lock, supra.* That such is the controlling question is clearly indicated by the court's opinion in *Fors* v. *Farrell* (1935), 271 Mich. 358, 260 N.W. 886, wherein it is said:

> "The creditors of an insolvent bank are vested by law with the right to look to the actual stockholders of the bank for payment of their statutory liability when properly assessed. This right of the creditors cannot be impaired by failure of the bank's records to disclose the true holders of its stock nor by a mere colorable holding of the stock by a third person who in fact holds the stock for the benefit of the real or actual stockholder. A sufficient reason for so holding is that the stockholder's double liability is imposed by law for the benefit of the bank's creditors. While such liability is contractual in nature . . . after all it is one fixed by statutory provision . . . and cannot be nullified by contract. Nor can this liability imposed by law be evaded by trust devices or other methods of indirect holding."

It is therefore of prime importance to determine the status of Agnes B. Russell in reference to the stock in controversy when the bank suspended operations on February 14, 1933. It is our opinion that prior to that date the estate of William H. Russell had been fully and finally administered as evidenced by the executors' "Final Report" of June 27, 1930, and as adjudicated by the court's order of September 15, 1930, approving the same. The legal effect of that part of said order continuing the estate for "further administration under the last Will and Testament of said decedent" was to constitute the executors of said estate trustees with power to manage and control the testator's personal property and the income from his realty for the use and benefit of Agnes B. Russell, the legatee of

a life estate therein. We are fortified somewhat in this view by the evident intent of the probate court to continue the executors as trustees, as indicated by its demand for a new and additional bond effective after the approval of the said final report.

The authority of an executor in this state stems from the will he is to execute and the statutes, as construed by the courts, prescribing his general and particular duties. The will of said William H. Russell gives his executors no such powers as they exercised over his estate after September 15, 1930, nor is there any statute in Indiana vesting in them as such executors any such powers and duties. Under such circumstances Bogert in his work on Trusts, Vol. 1, Sec. 12, p. 33, after enumerating powers of executors in general, announces the law as follows: "If any other duty is imposed upon the executor, or any other power conferred, not pertaining to the duties above enumerated, a trust or trust power is created, and the executor becomes a trustee, or the donee of a trust power." The appellee asserts upon authority of *Brannock* v. *Stoker, Administrator* (1881), 76 Ind. 558, 560, that personal property subject to a life estate "shall be invested by the executor or administrator with the will annexed, under the direction of the court, and the interest or income paid to the legatee for life." While this is undoubtedly the law it in nowise alters or changes the rule as laid down by *Bogert, supra,* but on the contrary is in complete harmony with it. As was said in a California case involving similar facts it makes little difference if those in control of a testator's personal estate are designated as executors if such control "and the performance of their duties with respect thereto are such as in the nature of things require that the mantle of a trusteeship shall be case upon their shoulders." In re:

*Estate of Shaw* (1926), 198 Cal. 352, 246 P. 48. We hold therefore that the estate of William H. Russell was fully and completely administered on September 15, 1930, and from that date until the death of Agnes B. Russell on April 16, 1939, the executors of his estate held, controlled and managed his personal estate, including the bank stock in question, as trustees for the use and benefit for the said Agnes B. Russell, as the legatee of a life estate therein.

It is true, of course, that a bank stock liability cannot be imposed upon one against his will. Agnes B. Russell, as the legatee of a life estate in such stock, had the right to reject the gift if she so desired but if she failed to do so within a reasonable time the presumption that she accepted it became conclusive. Page on Wills, sec. ed., Vol. 2, § 1198, also § 1235; 69 C. J. p. 969, § 2161; *State ex rel.* v. *Richard's Estate* (1940), 108 Ind. App. 178, 24 N. E. (2d) 422. The Supreme Court of Illinois has expressed the generally accepted rule in that regard in the following language:

> "It may be conceded that a bank stock liability cannot be imposed upon one against his will, but the character of the obligation is such that slight evidence of its acceptance is, in the absence of counter-vailing proof, sufficient. This is rightly so, for otherwise the owner of stock to whom it has not been transferred on the books of the bank might permit it to lie awaiting future developments of the bank and to speculate upon the benefits of accepting or rejecting it. Here the stock was inventoried by plaintiff in error as a part of her husband's estate. She was administratrix and sole heir of his personal estate. This she is, in law, presumed to have known. She accepted dividend checks made out to her personally, and, so far as her final report shows, used by her personally. It is a fair conclusion to be drawn from the foregoing facts that she accepted the stock as a part of her

husband's personal estate which came to her through his death." *Gahagan* v. *Whitney* (1935), 359 Ill. 419, 194 N. E. 581.

In the case before us there is no evidence that Agnes B. Russell ever affirmatively rejected the life estate in the stock given her under the terms of her husband's will. Almost four years after his death the bank remained solvent and paid quarterly dividends of $75.00 each on the thirty shares of stock owned by him when he died. Such stock was inventoried at $100 per share and there is evidence in the record that at that time it was worth double such amount; it was paying dividends of $10.00 per share per year or 10 per cent on its par value and continued to do so until 1933. It would seem that there was no reason for her to have rejected the gift and the undisputed evidence is that she did not do so. The current reports of the executors show that such dividends were accepted by them and became a part of the gross income of the estate and that the net income thereof was paid to Agnes B. Russell. All such dividend checks were endorsed by her and deposited to the credit of the estate, the whole of which was hers during life. It is well settled that if a donee accepts the benefits of a gift she will be conclusively held to have accepted the gift with all its burdens. *Fors* v. *Thoman* (1934), 267 Mich. 148, 255 N. W. 297; *Keyser v. Hitz* (1890), 133 U. S. 138, 33 L. Ed. 531; 9 C. J. S. 130, and cases cited. It may also be accepted as a general rule that persons to whom a life estate in bank stock has been transferred by will are liable as the actual owners thereof and liable as such for the payment of any assessments that may be levied against such stock under authority of a statute imposing super-added liability thereon. *Forrest* v. *Jack*

(1935), 294 U. S. 158, 79 L. Ed. 829, ·96 A. L. R. 1457. See 7 Am. Jur., p. 79, § 96 and note 99 A. L. R. 505.

All the essential facts necessary to constitute Agnes B. Russell a stockholder in the Home Savings Bank of Kalamazoo, within the meaning of the Michigan statute (3 Comp. Laws 1929, § 11945; Stat. Ann. § 23.52) upon which this action rests, are present. She was such a stockholder on February 14, 1933, when said bank suspended operations, and as such became personally liable for any assessment legally levied against the stock in which she had a life estate.

The appellee contends, however, that there is no evidence in the record that sufficient notice of the proposed plan for the reorganization of the bank was given as required by the Michigan law, and that a failure to give such notice goes to the jurisdiction of the Commissioner of the State Banking Department to make a valid assessment. In support of this proposition he calls our attention to § 7 of Act 95, Michigan Legislature 1933. The notice required by this section is notice of any plan for the reorganization of an insolvent bank as said commissioner may propose for. adoption and has nothing to do with the levy of assessments further than that it provides: "The Commissioner may reserve the right to enforce the individual liability of the stockholders until such time as he shall determine the advisability thereof." The right to levy a stock assessment is a necessary incident to the liability created by the Michigan statute which we have heretofore set out in full and which requires no notice, while the right to enforce such liability at any time the commissioner deems advisable is reserved to him by § 7, *supra*. It is very probable that the percentage of a stock assessment necessary to satisfy creditors might not be determined until after the reorganization

plan had been adopted, so obviously the notice required by § 7, *supra,* pertains only to the adoption of such plan and has nothing to do with the levy of the assessment.

We judge from the record and briefs of counsel that the decision of the trial court turned very largely upon § 6-805, Burns' 1933, § 3086, Baldwin's 1934, which provides as follows:

> "Whenever any portion of the estate of any person dying intestate shall consist of stock in a corportion or corporations, and when any person shall die testate owning such stock but making no disposition thereof in his will, the same shall not be sold except under the direction of the proper court; and in the distribution of the estate of the decedent among his heirs or legatees, such stock shall be distributed and transferred to them under the direction of the court."

In announcing its decision the court below construed this statute and made the following observation in reference thereto:

> "In the case at bar the evidence is that this corporate stock has never been distributed nor transferred to the legatees under the direction of the Elkhart Superior Court. That stock legally is still in the hands of the executor of the estate of the decedent, William Russell."

As we have above indicated, under the law of Michigan, the ownership of the legal title to such stock, or its actual possession by Agnes B. Russell, is unimportant in view of the fact that she was the owner of the real and beneficial interest therein when the bank suspended operations.

Furthermore, it is apparent that said statute refers only to such corporate stock as a testator fails to dispose of by his will and therefore it has no application here.

Having determined that the claim herein sued on was the personal obligation of the appellee's decedent during her lifetime and that, being unpaid when she died, it is a valid claim against her estate, we express no opinion as to its validity as the debt of William H. Russell enforcible, if timely brought, against his heirs or distributees under the provisions of § 6-1901, Burns' 1933, § 3265, Baldwin's 1934.

Judgment reversed with instructions to the trial court to sustain appellants' motion for a new trial, and for such further proceedings as may be consistent herewith.

Blessing, J., not participating.

NOTE.—Reported in 49 N. E. (2d) 349.